In re EXTENSION OF MEDIA COVERAGE FOR A FURTHER EXPERIMENTAL PERIOD.

No. 84–148–M.P.

Supreme Court of Rhode Island.

March 24, 1984.

## OPINION

**PER CURIAM.**

This matter again comes before us pursuant to a recommendation of the Media Advisory Committee relating to access by electronic media, including broadcasting, televising, and photographing, to judicial proceedings. On April 22, 1981, we adopted Provisional Order 15, which allowed media access to judicial proceedings on an experimental basis for a period of one year subject to guidelines that were appended to the rule and made a part thereof.

Thereafter, on December 31, 1982, we amended Provisional Order 15 to extend the experimental period of media access from January 17, 1983, through January 16, 1984. In extending this experimental period, we suggested that the media had an obligation to further the goal of public education as a justification for the placing of additional burdens upon trial justices in managing problems arising out of and adjusting to the presence of cameras in the courtroom. Our observations bear repeating here.

"Our consideration of the results of the experiment has disclosed that the public educational value of media access has, to this point, been of so limited a value as to be nearly imperceptible. We are of the opinion that the public understanding of the judicial system and its procedures has not been substantially furthered by televising, broadcasting or photographing during the experimental period. We therefore call to the attention of representatives of the media their obligation to further the goal of public education. This goal is the sole justification for the assumption of additional burdens by trial judges and other participants in the trial process in adjusting to and dealing with the presence of broadcasting, television, and still photography in the courtroom during court proceedings." *In re Extension of Media Coverage*, R.I., 454 A.2d 246, 247 (1982).

At the conclusion of this second experimental period, the Media Advisory Committee conducted hearings at which members of the judiciary, members of the bar, and members of the public were given an opportunity to express their views. Testimony of the participants at these hearings has been summarized and presented to this court, along with supplemental letters and statements that were presented to the committee at the hearings or through the mail. In addition, the committee has presented to the court summaries of the responses to questionnaires that were submitted to sixty-two jurors who had participated in criminal cases.

The Media Advisory Committee, after analyzing the testimony given, the results of the questionnaires returned, and related

materials obtained at the conclusion of the first experimental period, made recommendations to this court, including the following.

> "The committee recommends without dissent that media access to judicial proceedings should be either extended for a period not less than eighteen months or extended indefinitely, subject to published standards and guidelines."

In addition to its recommendation to extend media coverage, the committee also suggested that an agency be appointed to continue the monitoring process in the event of extension of coverage. The committee further suggested that the present guidelines are adequate and should be continued in effect in the event of extended or indefinite media access.

This court expresses its disappointment at the failure of the television and broadcast media to make more significant efforts to achieve the goals of public education. The only substantial educational effort of which we are aware is the complete recording by channel 10 of an appellate argument before this court with accompanying commentary by a member of the bar. We believe that in the light of the broad potential for education of the public in regard to the judicial process, the efforts of the media in this area to date may only be described as feeble.

■ We are constrained to reject suggestions made by representatives of the media and other witnesses at the committee hearings that there is no obligation to educate. We begin with the recognition that the electronic media have no First Amendment right to photograph or broadcast judicial proceedings. *See Chandler v. Florida,* 449 U.S. 560, 569, 101 S.Ct. 802, 807, 66 L.Ed.2d 740, 748 (1981); *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570, 587 (1978). Consequently, as suggested by the Supreme Court of Florida in *In re Petition of Post-*

*Newsweek Stations, Florida, Inc.,* 370 So.2d 764 (Fla.1979), the reason for allowing broadcasting and photographing of trial procedures is the potential contribution that the media can make in the area of wider public understanding and acceptance of judicial proceedings and decisions. *Id.* at 780. We suggest that a forty-five-second fragment of a judicial proceeding accompanied by a still or moving image scarcely contributes to such public understanding. Therefore, the presence of the electronic media with its potential for recording and broadcasting of judicial proceedings is based not upon any constitutional imperative but rather is dependent on a policy decision made by this court in the exercise of its supervisory authority. This policy decision is obviously subject to review and analysis based upon the weighing of benefits as opposed to disadvantages of such media presence.

■ We accept the findings of the Media Advisory Committee that no significant disruption or interference with judicial procedures has occurred as the result of the media presence. We recognize, however, from the testimony given before the committee that many trial justices find that the presence of the media adds to their already substantial burdens in the governance of adversary proceedings, already often charged with emotion and tension. Therefore, we reiterate the statement which we previously made that this additional burden must be balanced by some benefit in terms of increased public understanding that can only come about through a process of education. The preservation of tapes of judicial proceedings for use in educational programs, the occasional broadcasting of significant portions of judicial proceedings together with informed commentary are illustrations of opportunities that the media have by which they can contribute to public education and understanding. Disregard by the media of its obligation to contribute to public understanding and education dur-

ing a further experimental period may result in the termination of media access.

In response to the committee's recommendation, we hereby authorize the extension of access by the electronic media to judicial proceedings for an additional period of eighteen months, beginning April 1, 1984, and extending through September 30, 1985. By order of even date herewith, we make this extension of media access subject to the guidelines already in force. We shall, however, amend Guideline 15 in order to provide that further monitoring of media access will be carried out by the Advisory Board to the Chief Justice.[1] This advisory board consists of the justices of this court, the presiding justice of the Superior Court, the chief judge of the Family Court and the chief judge of the District Court. We are of the opinion that this board will be the body best suited to continue the monitoring process and to make further evaluations of the benefits and disadvantages of media access. The advisory board may, from time to time, call upon representatives of the media to advise and inform the board concerning matters of mutual concern to the board and the media relating to the broadcasting and photographing of judicial proceedings.

The court takes this opportunity to thank the Media Advisory Committee and its individual members for the work that they have performed on behalf of this court in analyzing and reporting upon the multiplicity of issues which have been raised incident to experimental programs conducted thus far. Many committee members have served continuously since 1978, and all have participated fully in the process of research and evaluation underlying the extension and regulation of media access to the present time. We commend the committee members for their service.

For the reasons stated, the recommendation of the committee to extend media ac-

cess for a period of eighteen months is adopted and Provisional Order 15 shall be amended accordingly.

## AMENDMENT TO PROVISIONAL ORDER No. 15

## AND TO GUIDELINES PROMULGATED IN ACCORDANCE THEREWITH

### MEDIA ACCESS TO JUDICIAL PROCEEDINGS

Provisional Order No. 15 adopted by this court April 11, 1981, amended on August 14, 1981, and further amended on December 31, 1982, is hereby further amended to extend the experimental period of media access to judicial proceedings for a period of eighteen (18) months beginning April 1, 1984, and continuing through September 30, 1985.

Provisional Order No. 15 is further amended to include an amendment to the guidelines attached hereto and made a part hereof. All other provisions of the guidelines promulgated by this court on April 22, 1981, and amended December 31, 1982, shall remain in full force and effect during the experimental period.

Entered as an order of this court this 23rd of March, 1984.

/s/ Bevelacqua, C.J.
Bevilacqua, C.J.

/s/ Kelleher, J.
Kelleher, J.

/s/ Weisberger, J.
Weisberger, J.

/s/ Murray, J.
Murray, J.

/s/ Shea, J.
Shea, J.

### AMENDED GUIDELINE No. 15

The Advisory Board to the Chief Justice (consisting of the Chief Justice, the Associate Justices of this court, the Presiding Justice of the Superior Court, the Chief

---

1. The Advisory Board to the Chief Justice is a body authorized by G.L. 1956 (1969 Reenact-

ment) § 8–15–5, as enacted by P.L.1969, ch. 239, § 1.

Judge of the Family Court and the Chief Judge of the District Court) will continue to evaluate the effects of media access to judicial proceedings. To this end the Advisory Board, directly or through its agents retained for this purpose, may submit to trial judges, parties, witnesses, jurors and other participants in trial proceedings questionnaires to be completed, or may cause such individuals to be interviewed as part of the evaluation process. All trial justices, parties, witnesses, jurors and other participants in trial proceedings are expected to cooperate fully with the Advisory Board to the Chief Justice, or its agents, in this evaluation process and the furnishing of all relevant information in implementation thereof.