**In re PERMITTING OF MEDIA COVERAGE FOR AN INDEFINITE PERIOD.**

**No. 88–140 M.P.**

Supreme Court of Rhode Island.

March 31, 1988.

OPINION

WEISBERGER, Justice.

This matter comes before us pursuant to a recommendation of the Advisory Board to the Chief Justice relating to access by electronic media, including broadcasting, televising, and photographing, to judicial proceedings. On April 22, 1981, we adopted Provisional Order No. 15, which allowed media access to judicial proceedings on an experimental basis for a period of one year subject to guidelines that were appended to the rule and made a part thereof. Thereafter, on December 31, 1982, we amended Provisional Order No. 15 and extended the experimental period of media access through January 16, 1984. On March 23, 1984, we again amended Provisional Order No. 15 and further extended the experimental period of media access. This experimental period, as extended, expired on September 30, 1985. Since the time of expiration of the experimental period, media access to judicial proceedings has continued without the formal extension of the experimental period by order of this court. This court has sought advice and recommendation from the Advisory Board to the Chief Justice, which consists of the Chief Justice, the Associate Justices of this court, the Presiding Justice of the Superior

Court, the Chief Judge of the Family Court, and the Chief Judge of the District Court. This Advisory Board is a body authorized by G.L. 1956 (1985 Reenactment) § 8–15–5.

At the time of our last extension of media access to judicial proceedings, we issued an opinion entitled *In re Extension of Media Coverage for a Further Experimental Period*, 472 A.2d 1232 (R.I. 1984). In that opinion, we commented upon the failure of the media to make significant efforts to achieve the goal of public education as a justification for their presence in the courtroom.

"This court expresses its disappointment at the failure of the television and broadcast media to make more significant efforts to achieve the goals of public education. The only substantial educational effort of which we are aware is the complete recording by channel 10 of an appellate argument before this court with accompanying commentary by a member of the bar. We believe that in the light of the broad potential for education of the public in regard to the judicial process, the efforts of the media in this area to date may only be described as feeble.

"We are constrained to reject suggestions made by representatives of the media and other witnesses at the committee hearings that there is no obligation to educate. We begin with the recognition that the electronic media have no First Amendment right to photograph or broadcast judicial proceedings. *See Chandler v. Florida*, 449 U.S. 560, 569, 101 S. Ct. 802, 807, 66 L. Ed. 2d 740, 748 (1981); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 610, 98 S. Ct. 1306, 1318, 55 L. Ed. 2d 570, 587 (1978). Consequently, as suggested by the Supreme Court of Florida in *In re Petition of Post-Newsweek Stations, Florida, Inc.*, 370 So.2d 764 (Fla. 1979), the reason for allowing broadcasting and photographing of trial procedures is the potential contribution that the media can make in the area of wider public understanding and acceptance of judicial proceedings and decisions. *Id.* at 780. We suggest

that a forty-five-second fragment of a judicial proceeding accompanied by a still or moving image scarcely contributes to such public understanding. Therefore, the presence of the electronic media with its potential for recording and broadcasting of judicial proceedings is based not upon any constitutional imperative but rather is dependent on a policy decision made by this court in the exercise of its supervisory authority. This policy decision is obviously subject to review and analysis based upon the weighing of benefits as opposed to disadvantages of such media presence." 472 A.2d at 1234.

We further stated that many trial justices have found that the presence of the media adds to their already substantial burdens in the governance of adversary proceedings, already often charged with emotion and tension. We then reiterated our prior statement that this additional burden must be balanced by some benefit in terms of increasing public understanding that can only come about through a process of education. We concluded our comments upon the need for public education by the media with certain suggestions:

"The preservation of tapes of judicial proceedings for use in educational programs, the occasional broadcasting of significant portions of judicial proceedings together with informed commentary are illustrations of opportunities that the media have by which they can contribute to public education and understanding. *Disregard by the media of its obligation to contribute to public understanding and education during a further experimental period may result in the termination of media access.*" (Emphasis added.) *Id.* at 1234–35.

From our review of the record of media education since March 23, 1984, we may repeat a comment which we made in a prior opinion entitled *In re Extension of Media Coverage for a Further Experimental Period*, 454 A.2d 246 (R.I. 1982): "Our consideration of the results of the experiment has disclosed that the public educational value of media access has, to this point, been of

so limited a value as to be nearly imperceptible." *Id.* at 247.

In spite of the fact that we have indicated in prior opinions that failure to balance the additional burdens upon the trial justice of having media present during judicial proceedings by contributing to public education and understanding of the judicial proceedings might cause media access to be terminated, we have chosen rather to adopt an intermediate position, in accordance with the recommendation of the American Bar Association. The House of Delegates of the American Bar Association on August 11, 1982, amended Canon 3 A(7) relating to media access to read as follows:

"A judge should prohibit broadcasting, televising, recording or photographing in courtrooms and areas immediately adjacent thereto during sessions of court, or recesses between sessions, except that under rules prescribed by a supervising appellate court or other appropriate authority, a judge may authorize broadcasting, televising, recording and photographing of judicial proceedings in courtrooms and areas immediately adjacent thereto consistent with the right of the parties to a fair trial and subject to express conditions, limitations, and guidelines which allow such coverage in a manner that will be unobtrusive, will not distract the trial participants, and will not otherwise interfere with the administration of justice."

As a result of our observation of media access to judicial proceedings since 1981, informed by opinions expressed by the trial justices of our various courts, and in light of the Canon of Judicial Ethics most recently adopted by the American Bar Association, we shall authorize trial justices to allow media coverage under guidelines promulgated by this court but modified to reflect the discretion reposed in the trial justice.

We therefore authorize the trial justice, in his or her sole and unreviewable discretion, to determine whether the media as defined in our guidelines may have access to the courtroom during any trial or other judicial proceeding. In the event that the trial justice for any reason determines that the presence of the media may constitute an unacceptable burden, in addition to his or her other responsibilities in presiding at a trial or proceeding, he or she may exclude the media [1] from all or a portion of a trial or judicial proceeding at the request of a participant or on his or her own motion for any reason deemed adequate in his or her sole discretion. In the event that the trial justice grants access to the media, that access shall be subject to the guidelines as amended pursuant to an order of even date with the filing of this opinion.

The Advisory Board to the Chief Justice will continue to monitor media access and to make further evaluations of the benefits and disadvantages of such access. The Advisory Board may, from time to time, call upon representatives of the media as well as members of the judiciary and members of the bar and public to advise and inform the board concerning matters of mutual concern to the board and the media relating to the broadcasting and photographing of judicial proceedings.

We have also amended our guidelines to permit the Chief Justice of this court, the Presiding Justice of the Superior Court, the Chief Judge of the Family Court, or the Chief Judge of the District Court to issue special orders relating to assignment of space for media equipment, limitation of space to be utilized by media representatives, and utilization of areas contiguous to courthouses or common areas of a courthouse that may be affected by the media

---

**1.** We emphasize that the media, as defined in guideline No. 2, does not include persons engaged in taking written notes for the print press who have been found by the Supreme Court of the United States to have a First Amendment right to presence in the courtroom during certain proceedings. *See, e.g., Press-Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Press-Enterprise* *Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). *But see Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

presence. This authority would enable the administrative justice of a particular court to deal effectively with problems that may arise in highly publicized trials wherein the attendance of large numbers of media representatives may make it necessary to assign space outside the courtroom, to place additional monitoring equipment in contiguous areas, and to provide for location of satellite equipment or the like. Such decisional burdens might be difficult for a trial justice to bear in addition to the task of presiding over judicial proceedings and controlling his or her own courtroom. The administrative justice, in order to protect access to the courtrooms and the orderly placing of vehicles or equipment contiguous to the courthouse would need the authority to issue specific orders in order that other business of the courts may proceed with a minimum of interference by the media presence. It follows that the Chief Justice, the Presiding Justice, or the Chief Judges of the Family and District Courts must have the authority to implement such special orders by appropriate sanctions, including, though not limited to, exclusion of one or more media representatives or equipment for such period as may be necessary to vindicate the effectiveness of the administrative justice's order.

For the reasons stated, the recommendation of the advisory board to extend media access for an indefinite period is adopted and the guidelines shall be amended to reflect the changes set forth in this opinion.

## AMENDMENT TO PROVISIONAL ORDER NO. 15 AND TO GUIDELINES PROMULGATED IN ACCORDANCE THEREWITH

### MEDIA ACCESS TO JUDICIAL PROCEEDINGS

Provisional Order No. 15 adopted by this court April 11, 1981, amended on August 14, 1981, December 31, 1981, and March 23, 1984, is hereby further amended to allow media access to judicial proceedings for an indefinite period beginning with the date of this order and continuing until further order of this court.

Provisional Order No. 15 is further amended to include amendments to the guidelines attached hereto and made a part hereof. All provisions of the guidelines, other than those specifically amended herein, shall remain in full force and effect until further order of this court.

/s/THOMAS F. FAY
   Chief Justice
/s/THOMAS F. KELLEHER
/s/JOSEPH R. WEISBERGER
/s/FLORENCE K. MURRAY
/s/DONALD F. SHEA
   Justices

## AMENDED GUIDELINE NO. 11

11. *Exclusion of Media By Trial Justice.* The trial justice may in his or her sole discretion prohibit the video recording, broadcasting, and/or photographing of a participant with a film, videotape, or still camera on the trial justice's own motion or on the request of a participant in a court proceeding. The trial justice may entirely exclude media coverage of any proceeding or trial over which he or she presides in his or her sole discretion. From any decision by a trial justice excluding the media in whole or in part, or limiting the photographing or recording of a participant in a court proceeding, there shall be no review by the Presiding Justice, by the Chief Judge of the trial justice's court, or by the Supreme Court.

## AMENDED GUIDELINE NO. 12

12. *Governance of Media by Chief Justice, Presiding Justice, or Chief Judge.* The Chief Justice of the Supreme Court, the Presiding Justice of the Superior Court, or the Chief Judges of the Family or District Court may in their discretion issue special orders concerning the conduct or presence of media representatives and/or equipment in areas of the courthouse outside a particular courtroom that is subject to the control of the trial justice. These orders may, without limiting the generality of the foregoing, include the assignment of areas or restriction of areas used by media representatives for the placing of equipment and parking of vehicles—whether these vehicles are utilized to assist in

■■■■■■■■■■■

broadcasting or otherwise—as well as limitations upon placing of equipment on land or sidewalks contiguous to a courthouse assigned to the use of courts under the supervision of the Chief Justice, Presiding Justice, or Chief Judge. For violation of orders issued, the Chief Justice, the Presiding Justice, or the Chief Judge may exclude media representatives and/or equipment from areas under his control for the duration of a trial or other proceedings or for such other period as he or she may deem appropriate in his or her discretion.

GUIDELINE NO. 14 IS HEREBY REPEALED.

GUIDELINE NO. 15 WILL BE DENOMINATED GUIDELINE NO. 13 AND WILL READ AS FOLLOWS:

13. *Evaluation of Program.* The Advisory Board to the Chief Justice (consisting of the Chief Justice, the Associate Justices of this court, the Presiding Justice of the Superior Court, the Chief Judge of the Family Court, and the Chief Judge of the District Court) will continue to evaluate the effects of media access to judicial proceedings. To this end the Advisory Board, directly or through its agents retained for this purpose, may submit to trial judges, parties, witnesses, jurors, and other participants in trial proceedings questionnaires to be completed or may cause such individuals to be interviewed as part of the evaluation process. All trial justices, parties, witnesses, jurors, and other participants in trial proceedings are expected to cooperate fully with the Advisory Board to the Chief Justice, or its agents, in this evaluation process and the furnishing of all relevant information in implementation thereof.