JAMES N. DRAKE

*v.*

C. E. AIRHART, *Sheriff, etc.*

(No. 13842)

Decided July 14, 1978.

*David M. Finnerin* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Pamela Dawn Tarr*, Assistant Attorney General, for defendant in error.

CAPLAN, CHIEF JUSTICE:

James N. Drake was indicted by the grand jury serving the Circuit Court of Wood County and was tried and convicted of the offense of armed robbery. He was sentenced to a term of ten years in the penitentiary, but the execution of the sentence was stayed to afford him an opportunity to appeal his conviction. During the pendency of his appeal he remained in the Wood County jail where the events occurred which gave rise to this proceeding.

On January 29, 1976, Drake herein sometimes called petitioner, filed a petition for a writ of habeas corpus in this Court, alleging that he had been the victim of cruel and unusual punishment while a prisoner in the Wood County Correctional Institution. This Court granted the writ, making it returnable before the Circuit Court of Wood County. After a full evidentiary hearing, the petitioner's prayer for relief was denied and this appeal was prosecuted. We affirm the judgment of the trial court.

The record reveals that the petitioner, on the evening of January 19, 1976 while in jail awaiting his appeal, somehow gained his release from his jail cell and was moving freely about the cell block. The evidence discloses that he engaged in an argument with an inmate in another cell, threw water on him, attempted to urinate on him and threatened to kill him. The recipient of this abuse began "hollering" and a deputy, summoned by the uproar, returned the petitioner to his cell. At this time his possessions, other than a blanket, mattress and his writing materials, were removed from the cell. The petitioner began to beat on the light fixtures with his shoe, shouting that he was going to destroy them.

By reason of this disturbance the deputy secured the cell door with leg irons. Checking on the petitioner two or three hours later, the deputy discovered that the leg irons had been removed from the cell door, were badly bent and were thrown out into the aisle. The jailer then, believing that the petitioner might escape, handcuffed him in a sitting position to the cell bars or door. Approximately two hours later it was discovered that the petitioner had freed himself from the handcuffs but not from the cell.

Thereafter, at about 10:30 P.M. the petitioner was handcuffed with his hands through the bars at a height which required him to remain in a standing position. According to the jailer, the petitioner could better be kept in view on the "scanner" when he was in a standing position; also, the petitioner was handcuffed for "his protection and the protection of the other prisoners." Jail property, too, was in jeopardy by reason of his cantankerous actions.

At approximately 2:30 A.M. on January 20, 1976 the petitioner was permitted to lie on his mattress but was handcuffed with his hands behind him and his legs through the bars. He remained in that position until 8:30 that morning. The petitioner contends that the above described treatment constituted cruel and unusual punishment and that by reason thereof he should be discharged from further confinement, or, in the alternative, be given a reduction in his sentence commensurate with the wrongful treatment to which he was allegedly subjected.

As noted in *State ex rel. Pingley v. Coiner*, 155 W. Va. 591, 186 S.E.2d 220 (1972), "The phrase 'cruel and unusual punishment', as used in the Eighth Amendment to the Constitution of the United States and in Article III, Section 5, of the Constitution of West Virginia, is difficult to define." Many cases were cited and analyzed therein demonstrating that difficulty. Worthy of comment in this regard are the words of the United States Supreme

Court in *Trop v. Dulles,* 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958): "The exact scope of the constitutional phrase 'cruel and unusual' has not been detailed by this Court ... The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards." In *Weems v. United States,* 217 U.S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910) the Court said that what constitutes cruel and unusual punishment has not been decided, but added: "It has been said that ordinarily the terms imply something inhuman and barbarous,—torture and the like." See *Anderson v. Nosser,* (5th Cir.) 438 F. 2d 183 (1971); *Holt v. Sarver,* (E.D. Ark.) 309 F. Supp. 362, *affirmed,* (8th Cir.) 442 F. 2d 304 (1971); and, Commonwealth ex rel. *Bryant v. Hendrick,* 444 Pa. 83, 280 A. 2d 110 (1971).

Although the treatment of a recalcitrant and defiant defendant in a courtroom certainly presents a situation different from that of a jail or penitentiary inmate, there is some parallel when considering the issue in the case at bar. In *Illinois v. Allen,* 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the Court condoned stringent disciplinary measures, such as allowing a "disruptive" defendant to be bound and gagged in a courtroom and said, "We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *See, United States v. Seale,* 461 F. 2d 345 (1972).

The tenor of the two immediately preceding cases demonstrates that reasonable decorum during a criminal trial is essential to the effective administration of justice. Thus, to insure the maintenance of decorum in the courtroom, the trial judge is permitted to exercise discretion to meet the circumstances of the case. Extreme circumstances permit extreme measures.

The maintenance of discipline in a jail or prison is essential to the effective and proper operation of a penal

system. This is an executive function with which courts ordinarily will not interfere. *State ex rel. Pingley v. Coiner, supra; Jackson v. Godwin,* (5th Cir.), 400 F. 2d 529 (1968). However, should the treatment rendered a prisoner, in the name of discipline, reach the level of "cruel and unusual" punishment, the courts should and will intervene. Prison officials are vested with wide discretion in disciplining prisoners committed to their custody and unless there is a clear abuse of that discretion, resulting in infringement of basic constitutional rights, their actions will not be disturbed.

In determining whether the disciplinary measures complained of constitute an abuse of discretion on the part of prison officials, each case must be decided on its own facts. The petitiner cites and relies upon *Landman v. Royster,* 333 F. Supp. 621 (1971), which related to the treatment of prisoners in a Virginia penal institution. That case was a class action wherein the petitioners sought injunctive and declaratory relief pertaining to several aspects of institutional care. The prisoner who complained of unconstitutional restraint had been handcuffed and chained to the cell bars in the prison hospital. He remained so restrained for fourteen hours; was not permitted to respond to the call of nature, nor was he permitted to eat. The handcuffs and chains were applied in a manner which caused him to be permanently scarred.

In the case at bar the petitioner demonstrated an ability as an "escape artist"; he provoked his fellow inmates and caused much consternation in the cell block; he was destructive of jail property; and was generally disruptive of the operation of the jail. As noted, he was so restrained for "his protection and the protection of the other prisoners." He did not, however, receive any physical injury, nor was he deprived of food or restroom facilities for any prolonged period of time. His restraints were checked periodically and were loosened on one occasion when red marks began to appear on his wrists.

We join the circuit court in its admonition to those in authority at the jail that "prisoners not be secured to

the Cell-Bars in such a manner as to require them to remain standing." While we do not condone the use of handcuffs to restrain prisoners in jail and expressly condemn the use of handcuffs in any manner which will produce any physical injury, we are in agreement with the trial court that in the circumstances of this case, the treatment of the petitioner did not constitute cruel and unusual punishment.

The judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*