704 P.2d 834

**The STATE of Arizona, Appellee,**

v.

**Jose Ramon CARDENAS, Appellant.**

**No. 2 CA–CR 3578.**

Court of Appeals of Arizona,
Department A, Division 2.

July 25, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Galen H. Wilkes, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Regula Case and Lieberthal & Kashman, P.C. by Howard A. Kashman, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The appellant was convicted of child molesting and given a mitigated sentence. On appeal he makes four contentions:

1) He was denied a fair trial because television was permitted in the courtroom after the trial had commenced,

2) He was denied a fair trial because the prosecutor repeatedly referred to media portrayals of child molestation,

3) The prosecutor misstated the burden of proof in rebuttal closing argument, and

4) The evidence was insufficient.

We affirm.

The facts considered in the light most favorable to sustain the jury verdict follow.

The appellant was seated in his automobile, which was parked on the street by his home. It was mid-afternoon. He was repairing the carpet in the car. The victim, a seven-year-old neighbor girl (she was eight at the time of trial) came by on her bicycle. The appellant called her over to his car where they had a conversation about the victim's chicken pox marks. Using the marks as a pretext, the appellant raised the victim's shirt and touched her on her upper body. He then raised her skirt, lowered her underpants and touched her vagina. He then turned her around and touched her bottom. He told her he had pock marks on his penis, pointing "where boys go to the bathroom," and asked if she would come to his home and put some medicine on it. He said he needed a little girl to apply the medicine. And he told her not to tell her mom and dad when she came over to his house.

### The Television in the Courtroom

On the second day of trial, a television crew had requested permission to film the proceedings, not for coverage of the case, but only for generic purposes. The court granted the request over the appellant's objection. The court told the jury:

"Folks, before we get started, I want to point out to you or that we have a television camera and crewman here who are going to be photographing some of the procedures here.

I want to tell you that under the guidelines that's been established by our Supreme Court for that, that they will not be taking any photographs of the jurors. They requested that they take photographs of these proceedings for use in a general fashion, and not for use in regard to this specific case.

They have made that request of me, and I have granted it because they are using this courtroom, and this case, and you are not to assume or believe that this case has any particular or significant or extraordinary significance above that which it inherently has in and of itself.

In other words, don't place any more importance on this case simply because the camera crew has come in here and chosen to photograph the proceedings."

The Arizona Supreme Court in Rule 45, Canon 3(A)(7)(b) and (g), Rules of the Supreme Court, Code of Judicial Conduct, 17A A.R.S., in effect at the time of trial, authorized a trial court in its discretion to allow the televising of trials or portions of the trial proceedings:

"(b) Electronic and still photographic coverage of public judicial proceedings other than the proceedings specified in paragraph (a) above may be permitted by the judge of the particular proceeding in his *sole discretion*, giving due consideration to the following factors:

\*     \*     \*     \*     \*     \*

(g) Objections of a party to coverage must be made on the record prior to commencement of the proceeding or portion thereof for which coverage is requested. Objections of a non-party witness to coverage of his or her appearance or testimony may be made to the judge at any time. Any objection not so made will be deemed waived. This provision shall not diminish the judge's authority to preclude or limit coverage of a proceeding in his *sole discretion* as above provided." (emphasis added)

Canon 3(A)(7)(b) set forth guidelines to aid the trial court in determining whether or not a trial should be televised.

"(i) The impact of coverage upon the right of any party to a fair trial;

(ii) The impact of coverage upon the right of privacy of any party or witness;

(iii) The impact of coverage upon the safety and well-being of any party, witness or juror;

(iv) The likelihood that coverage would distract participants or would detract from the dignity of the proceedings;

(v) The adequacy of the physical facilities of the court for coverage; and

(vi) Any other factor affecting the fair administration of justice."

The recent change by the Arizona Supreme Court of the rules pertaining to the televising of trials is consistent with the recent United States Supreme Court case of *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), which rejected the argument that the televising of a criminal trial automatically results in the denial of due process of law. Instead, the Court held that:

"Absent a showing of prejudice of constitutional dimensions to these defendants, there is no reason for this Court either to endorse or to invalidate Florida's experiment [televising criminal trials]". 449 U.S. at 582, 101 S.Ct. at 813–14, 66 L.Ed.2d at 757.

■ In order, then, for an appellant to obtain a reversal of a criminal conviction on account of a trial court allowing the televising of a criminal trial, the appellant must first show the trial court abused its discretion in allowing the televising and second, the televising prejudiced the appellant. Here the trial court did not abuse its discretion nor was appellant prejudiced by the trial court's allowing portions of the trial to be televised.

The appellant acknowledges that he can point to no specific prejudice as a result of the coverage. He claims he is entitled to relief due to the trial court not making a finding of necessity or weighing the interests of Canon 3(A)(7)(b), the court not complying with the requirements of 3(A)(7)(f), and the synergistic effect of the "unannounced filming" and the "prosecutor's repeated references to grisly images of dead little girls," (Issue two, which we consider ante).

■ The trial court was not required to make any particular finding on the record:

"Nothing in paragraph (b) or (c) above shall be construed as requiring the judge

of the particular proceeding to state grounds or make findings in support of his determination to permit, limit or preclude electronic and still photographic coverage, and the exercise of the judge's discretion in limiting or precluding such coverage shall not be subject to judicial review." Canon 3(A)(7)(d).

The trial court informed the parties the day before the filming that a television camera would photograph some of the trial proceedings. The trial court concluded that this satisfied the notice requirements. Appellant's counsel was unable to tell the court how his client was prejudiced by the request to televise the proceeding after the trial had already started. We believe the rule contemplates, by its references to filming portions of the proceeding, that requests to televise may be made and granted after a trial has commenced.

We believe it is clear that the trial court did not abuse its discretion in allowing the television. The coverage was minimal. The appellant was not photographed, nor was the jury, nor any witness who objected. In response to a request of appellant's trial counsel, the camera once was moved to a location counsel requested.

### Prosecutorial Misconduct

In his voir dire, opening statement, and closing argument, the prosecutor contrasted the evidence in the case at bench with more violent cases of molestation which he characterized as media portrayals. The appellant contends this type of argument, coupled with the television in the courtroom, combined to prejudice him to the point where he did not get a fair trial. Because no objection was made, any objection to the prosecutor's statements is waived unless we find fundamental error. We are unable to find any error in the statements, much less fundamental error.

### Burden of Proof

The appellant testified, denying that he had touched the victim as she described.

Other witnesses who were in the neighborhood also testified that they saw no such touching, although they saw the two together at the automobile. The only evidence of the molestation was the victim's testimony. The prosecutor told the jury, if they believed the victim, that was proof beyond a reasonable doubt. That was not a misstatement of the law, considering that evidence. The case turned on the credibility of the victim's testimony. The argument was a correct analysis of the facts and law. Furthermore, there was no objection so any error, and we find none, was waived.

### Sufficiency of the Evidence

After the opening, answering, and reply briefs were filed, the appellant retained new counsel and we permitted the filing of a supplemental brief and response by the state. The only new issue asserted was that the evidence was insufficient to support the verdict. We do not agree.

The appellant's principal contention is that there was no evidence showing that the alleged touching was motivated by an unnatural or abnormal sexual interest. See *State v. Madsen*, 137 Ariz. 16, 667 P.2d 1342 (App.1983). In order to accept this argument, we would have to hold that evidence of raising the skirt and lowering the underpants of a seven-year-old girl, touching her vagina, turning her and touching her bottom, and asking her to come to his house to put medicine on his penis, is insufficient to support a finding of unnatural or abnormal sexual interest. It is obvious that we should not make such a finding.

In the supplemental brief, new counsel also argues that much of the victim's testimony was in response to leading questions. He is correct that some leading questions were asked. There were, however, no objections to the leading questions. Prior to trial, the appellant's trial counsel moved in limine to preclude leading questions of the victim. The court, very proper-

ly, reserved ruling on this motion, saying, in effect, that if a witness had difficulty because of age, the state was entitled to lead "within certain bounds." It was incumbent on defense counsel, pursuant to this ruling, to object. We cannot, at this stage, anticipate what would have happened had there been objection. Surely we are in no position to reverse on speculation. Furthermore, we have reviewed the transcript of the victim's testimony and find that the use of leading questions was not abused and did not deprive the appellant of a fair trial.

Affirmed.

HOWARD and FERNANDEZ, JJ., concur.