378 S.E.2d 640

**STATE of West Virginia**

v.

**Mark Francis HANNA.**

No. 17238.

Supreme Court of Appeals of West Virginia.

Feb. 17, 1989.

---

Orville L. Hardman, Parkersburg, Mark Francis Hanna.

Harry G. Deitzler, Pros. Atty., Parkersburg, for State.

MILLER, Justice:

This is an appeal by the defendant, Mark Francis Hanna, from his conviction in the Circuit Court of Wood County of the crimes of kidnapping, abduction with the intent to defile, and burglary. The defendant contends that the trial judge erred in allowing cameras in the courtroom during trial and in allowing the State to introduce evidence of uncharged crimes. He also challenges the sufficiency of the evidence for conviction of the crime of abduction with intent to defile. We find error on this latter ground, and we remand for correction of sentence.

The charges against the defendant arose out of the disappearance of his girlfriend, twenty-year-old Leslie Marty, on July 30, 1983. The evidence most favorable to the State [1] showed that the defendant and Leslie had lived together intermittently for about one year. The relationship began to deteriorate after about six months, however, resulting in frequent arguments and

---

**1.** Since the defendant's principal contention on appeal concerns the sufficiency of the evidence, we must view the record in the light most favorable to the prosecution. *See, e.g., State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983); *State v.* *Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980); *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978).

episodes of domestic violence. In June of 1983, Leslie began dating Dwight Norman and told friends that she intended to break off her relationship with the defendant.

The defendant spent the night of July 29, 1983, with Leslie. The following morning they argued over her plans to go waterskiing with Norman in the afternoon. Leslie had arranged to meet Norman at around noon, but did not keep the appointment. Instead, at approximately 1:00 p.m., she arrived at Norman's Wood County home with the defendant, apparently in the midst of an argument. Before leaving Leslie there, the defendant introduced himself to Norman and stated that Leslie was "pissed off" because he had "kidnapped" her. Leslie said nothing, but appeared upset and later told Norman that she never wanted to see the defendant again.

Leslie and Norman returned to Leslie's house at about 6:00 p.m. The defendant subsequently arrived and presented Leslie with flowers and a card of apology.[2] In the course of the conversation, Leslie was heard to tell the defendant to "stay out of my life." She then left with Norman and spent the evening at his home.

At approximately 9:00 p.m., the defendant kicked in the locked front door of Norman's house and demanded to speak to Leslie. During the ensuing argument, the defendant stated that he "had a contract out on" Leslie and Norman and that they were "dead meat." Leslie retreated to a bedroom and locked the door. The defendant then pulled a pistol from his pocket, pointed it at Norman, and told him to get Leslie to come out into the living room. Norman explained the situation to Leslie through the locked door and told her she had better come out. Leslie opened the bedroom door and, without speaking, left

with the defendant, wearing only a bathing suit and leaving behind the rest of her belongings. Leslie's family and friends have not seen or heard from her since. Extensive efforts by the police to locate her have been unsuccessful.

In October of 1983, the defendant was indicted in Wood County on charges of burglary, kidnapping, and abduction with intent to defile. A jury trial in the Circuit Court of Wood County in March of 1985 resulted in verdicts of guilty. By order dated July 12, 1985, the circuit court sentenced the defendant to a term of not less than one nor more than fifteen years imprisonment upon the burglary conviction, a consecutive term of life imprisonment with a recommendation of mercy upon the kidnapping conviction, and a concurrent term of not less than three nor more than ten years imprisonment upon the abduction conviction.

I.

The defendant contends that the trial court erred in overruling his objection to the use of still photographic cameras in the courtroom during trial. The defendant's counsel twice objected at trial that the noise made by the camera shutters was distracting and asked the court to prohibit photography during trial. The trial court overruled these objections.

We have promulgated administrative rules governing the presence and use of cameras and electronic media in the courtrooms of this State. Among other things, these guidelines place restrictions on the sound that can be produced by still cameras. Objections to media coverage of the proceedings, or to any portion thereof, are addressed to the sound discretion of the

---

2. The card, as read to the jury, stated:

"Dearest Leslie,

"I have had a lot of time to think today about how I feel about you. I realize now that I have been smothering you. I know now that you need room to breathe. Leslie, I still love you, and I want to be yours. [Unintelligible] have your love, I would let you have the freedom you want and I would let you have whoever friends you want, including Dwight. Please just give me another chance to show you I can love you and you could still have your freedom. I love you with all my heart, and I am sorry I ruined your afternoon. No matter what you have decided about us, if you would just have a talk with me, I would appreciate it very much. Please call me at the Frontier.

"Your friend always,

"Mark

"P.S. I would do anything if you would at least talk to me."

trial judge, who may exclude recording or broadcasting equipment from the proceedings or terminate coverage if, at any time, he determines that it will impede justice.[3] Except as permitted by these rules, "the taking of photographs in the courtroom during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the courtroom shall not be permitted by the court." Rule 53, West Virginia Rules of Criminal Procedure.

■ It is generally accepted that the presence or use of cameras or sound recording or broadcasting equipment in the courtroom during a criminal trial is not inherently inconsistent with the defendant's right to a fair and impartial trial. *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); *People v. Spring,* 153 Cal.App.3d 1199, 200 Cal.Rptr. 849 (1984); *People v. Wieghard,* 727 P.2d 383 (Colo.App.1986); *Petition of Post–Newsweek Stations, Florida, Inc.,* 370 So.2d 764 (Fla.1979); *State v. Newsome,* 177 N.J.Super. 221, 426 A.2d 68 (1980); *State ex rel. Grinnell Communications Corp. v. Love,* 62 Ohio St.2d 399, 16 Ohio Op.3d 434, 406 N.E.2d 809 (1980); *State v. Wixon,* 30 Wash.App. 63, 631 P.2d 1033 (1981). However, the media does not have an absolute constitutional right to photograph, record, or broadcast judicial proceedings if such activity would impose a serious threat to the defendant's constitutional right to a fair trial. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *United States v. Edwards,* 785 F.2d 1293 (5th Cir.1986); *United States v. Hastings,* 695 F.2d 1278 (11th Cir.), *cert. denied, Post–Newsweek Stations, Florida, Inc. v. United States,* 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983); *KARK–TV Channel 4, Inc. v. Lofton,* 277 Ark. 228, 640 S.W.2d 798 (1982); *Petition of Post–Newsweek*

*Stations, Florida, Inc., supra; In re Extension of Media Coverage,* 472 A.2d 1232 (R.I.1984).

■ In *State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. 103, 267 S.E.2d 544 (1980), decided by this Court under the West Virginia Constitution before the United States Supreme Court had decided *Chandler,*[4] we addressed a related issue. In Syllabus Points 1 and 2 of *Herald Mail Co.,* we stated:

"1. Article III, Section 14 of the West Virginia Constitution, when read in light of our open courts provision in Article III, Section 17, provides a clear basis for finding an independent right in the public and press to attend criminal proceedings. However, there are limits on access by the public and press to a criminal trial, since in this area a long-established constitutional right to a fair trial is accorded the defendant."

"2. On a closure motion, the ultimate question is whether, if the pretrial hearing is left open, there is a clear likelihood that there will be irreparable damage to the defendant's right to a fair trial. Factors bearing on the issue of irreparable damage include the extent of prior hostile publicity, the probability that the issues involved at the pretrial hearing will further aggravate the adverse publicity, and whether traditional judicial techniques to insulate the jury from the consequences of such publicity will ameliorate the problem."

*See also State v. Franklin,* 174 W.Va. 469, 327 S.E.2d 449 (1985); *Daily Gazette Co., Inc. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984); *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982).

These considerations apply to the determination of whether and under what circumstances to allow cameras and electronic

---

**3.** Even in the absence of our administrative guidelines, the trial court has broad discretion to regulate any conduct which interferes with orderly procedure or courtroom decorum. *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979); *Drake v. Airhart,* 162 W.Va. 98, 245 S.E.2d 853 (1978); *State v. Cobb,* 122 W.Va. 97, 7 S.E.2d 443 (1940).

**4.** At the time *Herald Mail Co.* was decided, the United States Supreme Court had determined that there was no constitutional right of access to court proceedings by the news media. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). *See also Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1977).

media in the courtroom during a criminal trial. The decision involves a balancing test. On the one hand, there are constitutional guarantees of freedom of the press and the right to a public trial. On the other hand, there is the defendant's due process right to a fair and impartial trial. *See generally* 75 Am.Jur.2d *Trial* §§ 42, 42.5 (1974 & 1987 Cum.Supp.); Annot., *Validity, Propriety, and Effect of Allowing or Prohibiting Media's Broadcasting, Recording, or Photographing Court Proceedings,* 14 A.L.R. 4th 121 (1982).

■ Moreover, a criminal conviction will not ordinarily be reversed on the ground that the trial court abused its discretion in allowing the use of cameras or sound equipment at trial absent a showing that the defendant's right to a fair and impartial trial, as required under the Due Process Clause, was adversely affected thereby. *E.g., Chandler v. Florida, supra. See also State v. Cardenas,* 146 Ariz. 193, 704 P.2d 834 (App.1985); *People v. Stroble,* 36 Cal.2d 615, 226 P.2d 330 (1951), *aff'd,* 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952); *Willard v. State,* 272 Ind. 589, 400 N.E.2d 151 (1980); *State v. Langley,* 214 Or. 445, 323 P.2d 301 *cert. denied,* 358 U.S. 826, 79 S.Ct. 45, 3 L.Ed.2d 66 (1958); *Bradley v. State,* 450 S.W.2d 847 (Tex.Crim.App.1969).

*Chandler* also held that mere general allegations of prejudice are not sufficient. The defendant has the burden of showing with specificity the deleterious effect of the media coverage on his trial.[5] *See also King v. State,* 390 So.2d 315 (Fla.1980), *cert. denied,* 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); *LaBlanc v. People,* 161 Colo. 274, 421 P.2d 474 (1966); *Commonwealth v. Burden,* 15 Mass.App. 666, 448 N.E.2d 387, *review denied,* 389 Mass. 1102, 451 N.E.2d 1166 (1983); *State v. McKenzie,* 186 Mont. 481, 608 P.2d 428, *cert. denied,* 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507 (1980); *State v. Newsome,* 177 N.J.Super. 221, 426 A.2d 68 (1980); *State v. Harries,* 657 S.W.2d 414 (Tenn. 1983); *State ex rel. New Mexico Press*

*Ass'n v. Kaufman,* 98 N.M. 261, 648 P.2d 300 (1982); *State v. Jessup,* 31 Wash.App. 304, 641 P.2d 1185 (1982).

■ We cannot say that the trial court here abused its discretion in not prohibiting photography during trial. There is no evidence that the cameras used at the defendant's trial violated the restrictions on sound provided in our administrative rules. Although it appears that the camera shutter made an audible sound at trial, we have no way of determining from the record whether that sound was "distracting." Nor has the defendant made any specification as to how this impaired his counsel's performance or otherwise impaired his right to a fair trial. Accordingly, we must defer to the trial court's exercise of discretion on this issue.

## II.

■ The defendant's principal contention on appeal is that the State failed to prove all of the essential elements of the offenses of abduction and kidnapping. It is well settled that "[i]n order to secure a conviction the State must prove each and every element of the crime charged beyond a reasonable doubt." Syllabus Point 3, *State v. Knight,* 168 W.Va. 615, 285 S.E.2d 401 (1981). *See State v. Nichols,* 177 W.Va. 483, 354 S.E.2d 415 (1987); *State v. Wade,* 174 W.Va. 381, 327 S.E.2d 142 (1985); *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden,* 161 W.Va. 168, 241 S.E.2d 914, *cert. denied,* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978).

### A.

The defendant first contends that the State failed to show that any force or coercion was used to compel Leslie to leave Dwight Norman's residence. He asserts that because he used no physical force or express threats to remove Leslie, and she made no protest to leaving with him, she

---

5. Circumstances may arise, however, where the media presence is so pervasive and patently disruptive as to render the trial inherently violative of due process. *See, e.g., Sheppard v. Max-* *well,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). No such circumstances appear on the record before this Court.

must be deemed to have consented to accompany him.

We agree with the defendant's assertion that force or compulsion is an element of the offenses of kidnapping and abduction as charged in the indictment. The defendant was charged with "taking away Leslie Marty, against her will, with intent to defile her" in violation of W.Va.Code, 61-2-14 (1933), the abduction statute in effect at the time of Leslie's disappearance.[6] The kidnapping count of the indictment charged the defendant with taking Leslie Marty "by threat ... with intent of demanding from her concession, to wit: a chance to continue his relationship with her."[7]

■ The general rule is that in order to prove force or compulsion on a kidnapping or abduction charge, the State is not required to show that the accused used actual physical force or express threats of violence to accomplish the crime. It is sufficient if the victim submits because of a reasonable fear of harm or injury from the accused. *Parnell v. Superior Court*, 119 Cal.App.3d 392, 173 Cal.Rptr. 906 (1981); *People v. De Georgio*, 185 Cal.App.2d 413, 8 Cal.Rptr. 295 (1960); *People v. Dagampat*, 167 Cal.App.2d 492, 334 P.2d 581 (1959); *People v. Abbott*, 690 P.2d 1263 (Colo.1984); *Stowers v. State*, 266 Ind. 403, 363 N.E.2d 978 (1977); *Coleman v. State*, 264 Ind. 64, 339 N.E.2d 51 (1975). By the same token, consent of the victim is not a defense to a charge of kidnapping or abduction where such consent is obtained because the victim has a reasonable fear of harm or injury if he or she does not consent. *People v. Stephenson*, 10 Cal.3d 652, 111 Cal.Rptr. 556, 517 P.2d 820 (1974); *People v. De Georgio, supra; Coleman v. State, supra; Thompson v. State*, 215 Ind. 129, 19 N.E.2d 165 (1939); *State v. Holt*, 223 Kan. 34, 574 P.2d 152 (1977). *See generally*, 1 Am.Jur.2d *Abduction and Kidnapping* §§ 13, 15 (1962); 1 C.J.S. *Abduction* § 7 (1985); 51 C.J.S. *Kidnapping* § 1 (1967).

■ Here, the defendant had a history of violent behavior, of which Leslie was well aware, and had used force to enter Norman's home on the evening in question. He subsequently threatened both Leslie and Norman in the course of an argument. When Leslie withdrew to another room, she was informed that the defendant had produced a weapon and had threatened Norman with it. We believe that in these circumstances, Leslie would reasonably have felt an apprehension of harm or injury to herself or her companion which could have compelled her not to protest leaving with the defendant. The fact that she left the house wearing only a bathing suit and leaving behind all of her possessions, including her wallet and her shoes, supports the conclusion that her departure was not voluntary. Accordingly, we find that the State presented sufficient evidence of force or compulsion to support both convictions.

### B.

■ The defendant also contends that the State failed to prove the intent essen-

---

**6.** W.Va.Code, 61-2-14 (1933), provided, in pertinent part:

"If any person take away, or detain against her will, a female person, with intent to ... defile her, or to cause her to be ... defiled by another person ..., he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than three nor more than ten years."

In 1984, the Legislature amended the statute, making it gender-neutral, and reorganized its provisions. *See* 1984 W.Va. Acts, ch. 53. *See also State v. Miller*, 175 W.Va. 616, 620 n. 3, 336 S.E.2d 910, 914 n. 3 (1985).

**7.** Kidnapping is defined in W.Va.Code, 61-2-14a (1984), which provides, in pertinent part:

"If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary for life...."

It is clear that kidnapping can be accomplished under our statute without force or compulsion since it uses terms such as "fraud," "decoy," "inveigle" or "entice away."

tial to the kidnapping and abduction charges. Where an offense consists of an act of the accused combined with a particular intent, such specific intent is an essential element of the offense which the State must prove beyond a reasonable doubt. *State v. Parks,* 161 W.Va. 511, 243 S.E.2d 848 (1978); *State v. Sprague,* 111 W.Va. 132, 161 S.E. 24 (1931). *See State v. Davis,* 178 W.Va. 87, 357 S.E.2d 769 (1987); *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978).

■ The specific intent attendant to the crime of abduction charged in the indictment is the "intent to defile." We recently addressed this issue in *State v. Hatfield,* 181 W.Va. 106, 380 S.E.2d 670 (1988):

"The term 'defile' has been defined as follows:

'To corrupt purity or perfection of; to debase; to make ceremonially unclean; to pollute; to sully; to dishonor. State v. Kasnett, 30 Ohio App.2d 77, 283 N.E.2d 636, 638. To debauch, deflower, or corrupt the chastity of a woman. The term does not necessarily imply force or ravishment, nor does it connote previous immaculateness.'

Black's Law Dictionary 380 (5th ed. 1979). A sexual purpose or motivation is commonly understood to be an essential element of the offense of abduction with intent to defile. *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910, [914] n. 3 (1985). *See also People v. Moore,* 196 Cal.App.2d 91, 16 Cal.Rptr. 294 (1961); *State v. Montgomery,* 79 Iowa 737, 45 N.W. 292 (1890); *State v. Selby,* 183 N.J.Super 273, 443 A.2d 1076 (1981); *People v. LoVerde,* 7 N.Y.2d 114, 195 N.Y.S.2d 835, 164 N.E.2d 102 (1959); *State v. Botha,* 27 Utah 289, 75 P. 731 (1904); *Fitzgerald v. Commonwealth,* 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 469 (1983)." 181 W.Va. at 108, 380 S.E.2d at 672.

■ We cannot say that the State established beyond a reasonable doubt this element of the offense of abduction. There is no evidence of any overt act or statement indicating that the defendant was sexually motivated to remove Leslie Marty from Norman's home, and his relationship with Leslie was clearly not exclusively a sexual one. In view of the paucity of evidence on the issue of intent, we conclude that the State failed to meet its burden of proving all of the essential elements of the offense of abduction with intent to defile. Accordingly, the abduction conviction is reversed.

■ The specific intent necessary to the offense of kidnapping as charged in the indictment is the intent to demand "any concession or advantage of any sort." W.Va.Code, 61-2-14a. Although a sexual purpose or motivation has been held to satisfy kidnapping statutes requiring such an intent, *see People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980); *State v. Dubina,* 164 Conn. 95, 318 A.2d 95 (1972); *State v. Knutson,* 220 N.W.2d 575 (Iowa 1974); *State v. Sonnier,* 379 So.2d 1336 (La.1979), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); *Householder v. Ramey,* 485 P.2d 247 (Okla.Crim.1971), the intent to demand a concession or advantage has a much broader meaning and may encompass other benefits or purposes as well. *See People v. Swanson,* 638 P.2d 45 (Colo. 1981); *People v. Morgan,* 637 P.2d 338 (Colo.1981); *People v. Borrego,* 738 P.2d 59 (Colo.App.1987); *State v. Gibson,* 460 So.2d 689 (La.App.1984), *writ denied,* 464 So.2d 1376 (La.1985); *Oden v. State,* 401 S.W.2d 254 (Tex.Crim.App.1966).

■ We believe that the evidence in this case established the defendant's intent to demand a concession or advantage. The State clearly showed that there had been a breach in the defendant's relationship with Leslie Marty and that he had spent most of the day trying to convince her not to leave him. The defendant had attempted to prevent Leslie from meeting Dwight Norman, and when Leslie later rejected his attempts at reconciliation at the home of his rival, the defendant produced a weapon and forcibly removed her.

Upon this evidence, we believe a jury could reasonably have found that the defendant removed Leslie from Norman's

home in order to talk to her alone and once again attempt to persuade her to resume their relationship. This was the concession he sought to extract. Other courts have found such forcible reconciliation efforts sufficient to sustain a kidnapping conviction. *See State v. Williams,* 361 N.W.2d 473 (Minn.App.1985); *State v. Moore,* 315 N.C. 738, 340 S.E.2d 401 (1986). Accordingly, we do not find that the evidence of the defendant's intent was so manifestly inadequate as to warrant our interference with the kidnapping conviction.

## III.

The defendant's final assignment of error concerns the State's introduction of evidence of other criminal acts or misconduct not charged in the indictment.[8] The defendant principally contends that the circuit court erred in allowing the State to introduce evidence that he had committed acts of violence against Leslie in the past.

As we stated in note 4 of *State v. Dolin,* 176 W.Va. 688, 692, 347 S.E.2d 208, 213 (1986), the common law prohibition against admitting evidence of other crimes or wrongs to show the character of the defendant, and the exceptions thereto,[9] are now embodied in Rule 404(b) of the West Virginia Rules of Evidence, which provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Finley,* 177 W.Va. 554, 556, 355 S.E.2d 47, 49 (1987), we recognized the general exclusionary purpose of the rule:

> "The purpose of the rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other crimes, and to preclude the inference that because he had committed other crimes previously, he was more liable to commit the crime for which he is presently being indicted and tried. [*State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974)]; *State v. Harris,* [166 W.Va. 72, 76], 272 S.E.2d 471, 474 (1980)."

**8.** The defendant does raise a number of other alleged evidentiary errors. A thorough review of the entire record, however, shows that in each case the error was either waived by the defendant's failure to interject a proper and timely objection or motion at trial or amounted, at most, to harmless, nonconstitutional error. *See, e.g., State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986).

Another nonevidentiary error relates to the court's permitting an assistant United States attorney to assist the prosecuting attorney in the trial of this case. The record does not disclose the circumstances as to how he came to be involved. Defense counsel made a perfunctory objection. We have spoken to the procedures that must be utilized before a special prosecutor may be appointed in *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 260 S.E.2d 279 (1979). *See also State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 584, 251 S.E.2d 505, 509 (1979) (noting due process considerations in cases of prosecutorial overmatch).

In this case, it is doubtful that the involved attorney could be termed a special prosecutor since the regular prosecuting attorney was not disqualified. Moreover, he was not separately hired as a private prosecutor and subject to the admonitions contained in *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,*

445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980). Whether W.Va.Code, 7-7-8, can be read to authorize such an appointment is doubtful, but this point has not been raised.

**9.** Syllabus Points 11 and 12 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), state:

"11. Subject to exceptions, it is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial.

"12. The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

The list of "other purposes" for which evidence of other crimes or uncharged misconduct is admissible under Rule 404(b) is illustrative only, and "the exceptions to the admission of collateral crimes listed in the rule are not meant to be exhaustive." *State v. Dolin,* 176 W.Va. at 692, 347 S.E.2d at 213. (Citations omitted). *See State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982). *See generally* E. Imwinkelried, *Uncharged Misconduct Evidence* § 2:30 (1984); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.3(B) (2d ed. 1986). However, evidence of other crimes or misconduct may always be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, W.Va.R.Evid. *See State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980). The admissibility of such evidence is a matter within the sound discretion of the trial court. *See State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983); *State v. Rector,* 167 W.Va. 748, 280 S.E.2d 597 (1981); *State v. Sette,* 161 W.Va. 384, 242 S.E.2d 464 (1978).

Where the lack of consent is an element of the crime, we have recognized that evidence of a defendant's prior violent behavior or incidents of bodily harm toward the victim or others of which the victim is aware may be admissible to show that her actions were not consensual, but were induced by fear. *State v. Lucas,* 178 W.Va. 686, 364 S.E.2d 12 (1987); *State v. Pancake, supra.*[10] Here, such evidence was clearly relevant to show that Leslie's departure with the defendant was not consensual, an essential element of the offense of kidnapping. After carefully reviewing the entire record, we cannot say that the probative value of this evidence was outweighed by its possible prejudicial effect.

Accordingly, we find no abuse of discretion on the part of the trial court in admitting this evidence.

## IV.

In summary, we conclude that the evidence was insufficient to support the charge of abduction with intent to defile, and we reverse the judgment of the circuit court in that regard. We find no error warranting reversal of the remaining convictions, however, and they are affirmed. This case is, therefore, remanded with directions to vacate the abduction conviction and sentence.

Affirmed in part, reversed in part, and remanded with directions.

McGRAW, J., participated in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

---

**10.** Syllabus Point 4 of *Pancake* states: "Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others of which she is aware, is relevant to establish her fear of her attacker that is a major element of proof of first-degree sexual assault. W.Va.Code, 61–8B–1(1)(b)."