**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4216

RAYMOND EDWIN D'ARCO,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-91-385)

Submitted: January 27, 1998

Decided: February 19, 1998

Before WIDENER and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Timothy N. Barber, Charleston, West Virginia, for Appellant.
Rebecca A. Betts, United States Attorney, Stephanie D. Thacker,
Assistant United States Attorney, Charleston, West Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Raymond Edwin D'Arco appeals the district court order revoking his supervised release and imposing a sentence of eighteen months incarceration.

In February 1993, D'Arco was sentenced to fifteen months incarceration followed by three years of supervised release for pleading guilty to aiding and abetting in tampering with a vehicle identification number. He began his supervised release in April 1994.

In January 1997, D'Arco's probation officer received information from D'Arco's former girlfriend, Vickie McFarland, that D'Arco assaulted her. Thus, the probation officer petitioned the court to issue a warrant and revoke D'Arco's supervised release. The petition alleged that D'Arco violated the condition of his supervision that he not commit another federal, state, or local crime because he had "been charged with domestic violence as a result of an incident that occurred on January 16, 1997."

A revocation hearing was held on February 6, 1997, and the Government presented the testimony of McFarland and several corroborating witnesses, each of whom testified regarding the January 16 incident. At the close of the Government's evidence, upon D'Arco's motion, the district court dismissed the petition without prejudice to the Government because the evidence presented did not strictly adhere to the allegation in the revocation petition. Although the Government presented evidence that D'Arco had committed domestic assault, the petition erroneously alleged that D'Arco had been "charged with" domestic assault.

D'Arco's probation officer filed a second petition to revoke D'Arco's supervised release alleging that D'Arco "committed" the state offenses of domestic battery and kidnapping.

2

The district court held a second revocation hearing on March 12, 1997, and adopted the testimony of the Government witnesses who previously testified at the February 6 hearing. D'Arco then presented two witnesses and proffered testimony that was objected to by the Government. At the close of the hearing, the district court found that D'Arco did attack and assault McFarland on January 16. Thus, the district court revoked D'Arco's supervised release.

On appeal, D'Arco contends that the district court erred: (1) by finding that he committed a Grade A violation of the conditions of his supervised release; (2) by refusing to hear and admit testimony of defense witnesses intended to discredit McFarland; and (3) in calculating his sentence for violating his supervised release.

Conduct constituting a state offense punishable by a term of imprisonment exceeding one year that is a crime of violence states a Grade A violation of supervised release conditions. See U.S. Guidelines Manual § 7B1.1(a)(1), p.s. (Nov. 1996). Upon a finding of a Grade A violation, the district court shall revoke supervised release. See USSG § 7B1.3(a)(1), p.s. In contending that the district court erred by finding that he committed a Grade A violation of his supervised release conditions, D'Arco makes two arguments. He first claims that his due process rights were violated because he did not receive notice of his alleged violations. He also contends that the evidence was insufficient to support the district court's finding that he violated his supervised release conditions. Both arguments are meritless.

Due process requires that a defendant facing revocation of his supervised release be given: (1) written notice of the alleged violation; (2) disclosure of the evidence against him; (3) an opportunity to appear and present evidence; (4) an opportunity to question adverse witnesses; and (5) notice of the right to be represented by counsel. See Fed. R. Crim. P. 32.1(a)(2); see also Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972). D'Arco received notice of the charges against him in two petitions filed by the probation office. Furthermore, prior to the revocation hearing at which his supervised release was revoked, D'Arco was present and participated in four evidentiary hearings.

After the first revocation petition was filed, a magistrate held a preliminary hearing. The Government called several witnesses who were

3

cross-examined by defense counsel. D'Arco testified at that hearing. The district court then held the first revocation hearing on February 6. Again, the Government called witnesses who were cross-examined by defense counsel. After the second petition was filed, a magistrate held another preliminary hearing. Although the Government attempted to have the magistrate judge adopt the testimony from the initial preliminary hearing, defense counsel objected and insisted upon hearing the Government witnesses and cross-examining them. At the second revocation hearing on March 12, the court adopted the testimony from the initial revocation hearing on February 6 and D'Arco presented two witnesses and proffered testimony that was objected to by the Government. Thus, we find that D'Arco received the process he was due. See Fed. R. Crim. P. 32.1(a)(2); Morrissey, 408 U.S. at 488-89.

Furthermore, the record supports the district court's finding that D'Arco committed a Grade A violation of the terms of his supervised release. The district court had only to find a violation of a condition of D'Arco's supervised release by a preponderance of the evidence. See 18 U.S.C. § 3583(e)(3) (1994). Further, this court must review the district court's decision to revoke D'Arco's supervised release for an abuse of discretion. See United States v. Copley , 978 F.2d 829, 831 (4th Cir. 1992).

The second revocation petition alleged that D'Arco"committed" the state crimes of domestic battery and kidnaping. Domestic battery does not constitute a Grade A violation under West Virginia law because the offense is not punishable by a term of imprisonment exceeding one year. See USSG § 7B1.1(a)(1); W. Va. Code § 61-2-28(a) (1997). However, kidnapping does constitute a Grade A violation. See USSG § 7B1.1(a)(1); W. Va. Code § 61-2-14a (1997). West Virginia law states that:

> If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage

4

of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony . . .

W. Va. Code § 61-2-14a. The parties do not dispute that D'Arco and McFarland were "family or household" members. Further, the Government presented evidence that D'Arco and McFarland previously lived together and had a child in common. McFarland testified that on January 16, she came home from work and pulled into her driveway. D'Arco drove his truck into the driveway behind McFarland's truck and blocked her exit. When D'Arco came up to McFarland's truck window, she rolled down the window "just a little crack." D'Arco reached his hand through the window and grabbed her hair. He attempted to roll down the window. He subsequently grabbed a rock and broke the window and opened the door. He dragged McFarland out of her truck and threw her on the ground. He grabbed her by her hair again and dragged her to his truck. He placed her on the seat of his car and choked her so she would stop screaming. He drew his fist back and told her that he would knock her out to get her to "shut up." McFarland stopped screaming. D'Arco held McFarland by the hair as he drove off. He threatened to kill her. After awhile, D'Arco told McFarland that he would "let [her] go this time," but that she "better not [let] one word of it get out." After holding McFarland for approximately two and a half hours, D'Arco drove her back home and told her that he would replace the broken window. McFarland, her son, and several other witnesses testified as to the injuries McFarland received on January 16.

D'Arco contends that the Government did not show that he had the requisite "purpose" or "intent" under the kidnapping statute. The intent to demand "any concession or advantage of any sort" has a broad meaning. See State v. Hanna, 378 S.E.2d 640, 647 (W. Va. 1989). McFarland testified that D'Arco was "ranting and raving and screaming the whole time he was going to kill me" and that "[if] I went to his parole officer of if his parole got violated or anything that he would kill me, he meant to kill me, and he would kill me." Furthermore, McFarland and D'Arco's present girlfriend testified about a telephone conversation on January 16 during which McFarland related to D'Arco's girlfriend that she was attempting to get the title

5

to a vehicle D'Arco was driving taken out of her name. D'Arco's probation officer also testified regarding communication with McFarland about her concern over the vehicle title. Thus, the evidence supports a finding that D'Arco was attempting to stop McFarland from contacting his probation officer as evidenced by his threats that if McFarland went to his probation officer he would kill her. It is also possible that D'Arco fled with McFarland in an attempt to evade capture or arrest after he had committed domestic battery. Therefore, we find that a preponderance of the evidence supported the district court's finding that D'Arco committed the offense of kidnaping. See 18 U.S.C.A. § 3583(e)(3).

D'Arco next contends that the district court erred in excluding testimony intended to discredit McFarland. We review evidentiary rulings for an abuse of discretion and such rulings are subject to a harmless error analysis. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997). D'Arco challenges the district court's refusal to admit testimony from defense witnesses that prior to January 16 McFarland had stated that she intended to have D'Arco's supervised release revoked and D'Arco sent to jail. We find that the district court did not abuse its discretion in excluding testimony relating to events that occurred prior to January 16.

Lastly, D'Arco makes a frivolous claim that his sentence upon revocation was miscalculated under Chapter 7 of the Sentencing Guidelines. Because the district court found that D'Arco committed a Grade A violation of his supervised release conditions and was subject to Criminal History Category III when he originally was sentenced to a term of supervision, his guideline range was eighteen to twenty-four months. See USSG § 7B1.4, p.s. The court sentenced D'Arco within that range to eighteen months incarceration.

Accordingly, we affirm the district court's order revoking D'Arco's supervised release and sentencing him to eighteen months incarceration. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6