## No. 26398

**The People of the State of Colorado v. Robert E. Parga**

(535 P.2d 1127)

Decided May 19, 1975. Opinion modified and as modified rehearing denied June 16, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Keller & Dunievitz, Alex Stephen Keller, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Robert E. Parga, the appellant herein, was convicted by a jury of felony theft of real estate in violation of 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[1] Following the denial of his motion for a new trial, he was sentenced, and the judgment and conviction were appealed to this court. The primary issue on appeal is whether real property can be the subject of theft. Ancillary issues involving the hearsay rule have been raised relating to the exclusion of the proffered testimony of two witnesses. As we review the record, Parga was properly charged, and reversible error did not occur. Therefore, we affirm.

---

[1]Now section 18-4-401, C.R.S. 1973.

The factual basis for the charges which were made against Parga are not in dispute. The acts are all tied to Parga's fiduciary status as a lawyer for the estate of Minnie Swanson. Carl Swanson, a resident of Illinois, was the executor and beneficiary in the will of Minnie Swanson, who died in 1971. The 360-acre parcel of ranch land in Montezuma County, Colorado, which is involved in this case, was devised to Carl Swanson in Minnie Swanson's will. The lawyer for the Illinois estate of Minnie Swanson was LeRoy Ufkes, who drafted the will and probated the estate in Illinois. Ufkes retained Parga to carry out the duties of ancillary administration in Colorado and directed Parga to clear the title to the property and to cause the property to be sold.

Pursuant to an agreement for the sale of real estate in the Swanson estate, which was signed early in 1973, Carl Swanson executed a deed to Victor Reynolds, a friend and client of Parga's, for $51,000. The evidence shows that Reynolds was a strawman who allowed Parga to use his name in the transaction but did not intend to purchase the real estate. After the deed to Reynolds was recorded, Parga obtained a loan from a bank where he was a director to pay Swanson for the property. In order to secure the loan, Parga advised the bank that he was the secretary of The High Country Construction Company, which was a defunct corporation that had not transacted business for several years. The High Country Construction Company was owned by another friend and client of Parga's, Clayton Melby. In order to secure the loan, a note was signed by both Parga and Melby, and Parga pledged a $30,000 certificate of deposit which he owned and personally guaranteed the loan. When the loan was secured, Parga paid Swanson and caused Reynolds to deed the surface rights to The High Country Construction Company and to sign a deed in blank as to the mineral rights. The deed to the corporation was duly recorded. Thereafter, on behalf of The High Country Construction Company, Parga and Melby signed the deed to the surface rights in blank, and Parga took possession of both of the blank deeds. Parga's name was not entered on the deeds, and the deeds were never recorded. The deeds were kept in the estate file in Parga's law office.

The record also discloses that Parga did not inform either

Ufkes or Swanson of his relationship with Victor Reynolds or of the fact that Reynolds was a strawman. He also failed to disclose that he had received an offer to purchase the property for $126,000 in 1972 and that he had rejected the offer.

## I.
### Theft of Real Property

■ Parga asserts that he was charged with theft of real estate and that real property cannot be the subject of theft. 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[2] He contends that he could have been charged with obtaining the signature of Carl Swanson by deception in violation of 1971 Perm. Supp., C.R.S. 1963, 40-5-112,[3] but that the prosecutor elected to charge him with the wrong crime. Parga requests that we declare that real property is not included within the theft statute and that real property does not qualify as "anything of value" within the meaning of the statute. If we were to adopt Parga's theory, we would be compelled to ignore the clear intent of the legislature. In pertinent part, 1971 Perm. Supp., C.R.S. 1963, 40-4-401[4] provides:

*"18-4-401. Theft.* (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat of deception, or knowing said thing of value to have been stolen; and

"(a) Intends to deprive the other person permanently of the use or benefit of the thing of value."

The definitional sections of the statute, as well as the history of the statute, fully answer Parga's claim that real property cannot be the subject of theft. Within the purview of the theft statute, "thing of value" is defined to include "real property." 1971 Perm. Supp., C.R.S. 1963, 40-1-1001(3)(r) (definitions governing chapter 40).[5]

■ The legislative history of the theft law further buttresses our construction of Section 401. As reported by the Colorado Legislative Council, the Colorado theft provisions were patterned after the Illinois statutes and the Model Penal Code. *Colorado Legislative Council, Colorado Criminal Law,* Research Publica-

---

[2]Now section 18-4-401, C.R.S. 1973.
[3]Now section 18-5-112, C.R.S. 1973.
[4]Now section 18-4-401, C.R.S. 1973.
[5]Now section 18-1-901(3)(r), C.R.S. 1973.

tion No. 68 at 99-100 (1962). Consequently, we look to the Illinois statutes for guidance in interpreting our theft statute. The Illinois statute provides that "[a] person commits theft when he knowingly: (a) obtains or exerts unauthorized control over property of another." Ill. Ann. Stat., ch. 38, § 16-1(a) (Smith-Hurd 1970). The Illinois legislature further defined "property" to include real property. Ill. Ann. Stat., ch. 38, § 15-1 (Smith-Hurd 1970). In addition, the Model Penal Code has taken a similar approach. *Model Penal Code* §§ 223(6) and 223.2(2) (Proposed Official Draft 1962). Moreover, the Illinois legislature defined "obtains control" in terms which directly apply to real property and has provided: "[T]he phrase 'obtains or exerts control' over property, includes but is not limited to the . . . sale, conveyance, or transfer of title to, or interest in, or possession of property." Ill. Ann. Stat., ch. 38, § 15.8 (Smith-Hurd 1970). The Model Penal Code has defined "obtain" more explicitly, although in similar terms, with the statement that: "[O]btain means: (a) in relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another." *Model Penal Code* § 223(5) (Proposed Official Draft 1962). *Accord,* Pa. Stat. Ann. tit. 18, § 3921 (1973). *Cf. State v. Turner,* 238 N.C. 411, 77 S.E.2d 782 (1953); *Commonwealth v. Meinhart,* 173 Pa.Super. 479, 98 A.2d 392 (1953); *State v. Nelson,* 195 Tenn. 441, 260 S.W.2d 170 (1953).

In view of the statutory language enacted by the Colorado legislature and the substantive bases for the theft provisions, we conclude that real property may be the subject of theft and that the defendant was correctly charged.

## II.
### Exclusion of Testimony

The defendant contends that the trial court committed reversible error when it ruled that two defense witnesses could not testify because their testimony constituted inadmissible and incompetent hearsay. Parga maintains that the two defense witnesses would have testified as to conversations which they had with him on different occasions and which reflected his state of mind. He argues that the testimony was admissible because it directly revealed his state of mind and would have shown that he did not intend to secure the property for himself, but that the transactions

with strawmen were conducted in an effort to create a smoke screen to prevent C. L. Spencer, who had occupied the land for 25 years, from purchasing the land. The state of mind exception to the hearsay rule is not applicable to the testimony in issue.

The excluded testimony was hearsay and inadmissible because the defendant proffered the out-of-court statements to establish the truth of the matters asserted therein, which necessarily depended on the credibility of the defendant. *Fernandez v. People,* 176 Colo. 346, 490 P.2d 690 (1971); *Garrison v. People,* 158 Colo. 348, 408 P.2d 60 (1965); *McCormick on Evidence* § 246 (E. Cleary ed. 1972). The state of mind exception to the hearsay rule is severely limited, however, and provides that out-of-court utterances may be admitted to establish the truth of the matters contained therein only when the evidence reflects the defendant's present state of mind. *People v. Burress,* 183 Colo. 146, 515 P.2d 460 (1973); *Betts v. Betts,* 3 Wash.App. 53, 473 P.2d 403 (1970); *McCormick on Evidence* §§ 294 & 295 (E. Cleary ed. 1972). In the case before us it is clear that the statements which the defendant allegedly made to the two defense witnesses occurred well after the time when the transactions with the strawmen occurred, rather than before the transaction, as the exception requires. In other words, the statements reflected a past state of mind and thus lacked the requisite indicia of reliability necessary to come within the exception to the hearsay rule.

We have reviewed the remaining arguments presented in this appeal and have concluded that they lack sufficient merit to warrant discussion.

Accordingly, the judgment of conviction is affirmed.