The PEOPLE of the State of
Colorado, Petitioner,

v.

**Nick SAN EMERTERIO, Respondent.**

No. 91SC283.

Supreme Court of Colorado,
En Banc.

Oct. 19, 1992.

Rehearing Denied Nov. 23, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender, David M. Furman, Deputy State Public Defender, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to determine whether the Colorado Court of Appeals was correct in reversing the conviction of Nick San Emerterio for first-degree kidnapping. *See People v. Emerterio*, 819 P.2d 516 (Colo.App.1991). The court of appeals based its reversal on the conclusion that the victim's agreement to perform an act "after her release and over which defendant had no control to insure her performance" did not constitute a "concession" within the meaning of the first-degree kidnapping statute, section 18–3–301, 8B C.R.S. (1986). *Emerterio*, 819 P.2d at 519. We disagree with that conclusion and therefore reverse the court of appeals with directions to remand for entry of judgment and imposition of sentence for first-degree kidnapping.

I

The defendant was charged in El Paso County District Court with first-degree kidnapping,[1] first-degree sexual assault,[2] and soliciting for child prostitution,[3] based on events that occurred on October 17, 1987. The victim was a woman who was eighteen years old at the time. She testified at the defendant's jury trial and described her

---

1. § 18–3–301, 8B C.R.S. (1986).

2. § 18–3–402, 8B C.R.S. (1986).

3. § 18–7–402, 8B C.R.S. (1986).

encounter with the defendant as outlined in the following paragraphs. The defendant did not testify.

On the afternoon of October 17, 1987, the victim was walking along a busy street in Colorado Springs on her way from her apartment to a convenience store a few blocks away. A vehicle driven by a person later identified as the defendant was traveling on a side street and stopped at the intersection with the street along which the victim was walking. The defendant opened the passenger door of the vehicle and asked the victim for directions. The victim offered directions and pointed the way. The defendant grasped her arm, pulled her into the vehicle against her will, and drove to the parking lot of a small, quiet shopping center several blocks away, all the while restraining the victim by her arm or her shirt. During the trip, the defendant said the victim was to perform sexual favors for him for fifty dollars and that he also wanted her to bring him some eleven- or twelve-year-old children so that he could take pictures of them. After stopping the vehicle in the parking lot, the defendant grasped the victim by the back of the head and forced her to place her mouth to his penis. Afterward, the defendant drove the vehicle down an alley, still holding the victim to prevent her from escaping, and stopped before entering a busy street.

After the sexual assault and continuing during the ensuing drive, the defendant again told the victim he wanted her to bring him eleven- or twelve-year-old children, adding that he wished to take nude pictures of them and that he wanted the children to perform sexual favors for him. The victim testified that she "tried to play along with him" and promised to bring him some children. The defendant promised monetary compensation for both the victim and the children, and the two agreed that the victim would meet him at a designated time and place the next day with an eleven- or twelve-year-old child. The victim testified further that she cooperated and made the promise to prevent the defendant from becoming angry and to avoid bodily injury.

The defendant gave the victim five dollars, rather than the promised fifty dollars, telling her that she had not performed the earlier sexual favor correctly. Then, while the vehicle was still stopped in the alley, the victim was able to break free from the defendant's grasp and escape. She immediately reported the events to a friend, who notified the police. The defendant was ultimately arrested, charged, brought to trial, and convicted of first-degree kidnapping, first-degree sexual assault, and soliciting for child prostitution. The district court sentenced the defendant to twelve years imprisonment on each count, the sentences to run concurrently.

The defendant appealed to the court of appeals, which affirmed the convictions for first-degree sexual assault and soliciting for child prostitution[4] but reversed the conviction for first-degree kidnapping and remanded for entry of a judgment of conviction and imposition of sentence for second-degree kidnapping. *Emerterio*, 819 P.2d at 519, 520. The reversal was based on the court's conclusion that the intent to force a "concession," an element of first-degree kidnapping, had not been established. *Id.* at 519. Without citing authority, the court held that the victim's agreement to obtain children for the defendant in the future "after her release and over which defendant had no control to insure her performance, [did] not amount to a concession" and, therefore, did not supply a basis for a finding that he acted with the specific intent required by the statute. *Id.* We granted the People's petition for certiorari to review the propriety of that determination as a basis for the court of appeals' reversal of the first-degree kidnapping conviction.[5]

---

4. The defendant's convictions and sentences for first-degree sexual assault and soliciting for child prostitution are not before us for review.

5. In addition to rejecting the defendant's extraction of the victim's promise to obtain children as a means of establishing the statute's intent element, the court of appeals also determined that her "forced submission to defendant's sexual assault [could not] serve as the concession required by § 18–3–301(1)." *Emerterio*, 819 P.2d at 519. Relying on the principle that there is generally no "concession" when a victim is

## II

The statute defining first-degree kidnapping provides in relevant part:

Any person who does any of the following acts with the intent thereby to force the victim or any other person *to make any concession* or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:

(a) Forcibly seizes and carries any person from one place to another....

§ 18–3–301(1), 8B C.R.S. (1986) (emphasis added). To review the court of appeals' decision that there was insufficient evidence to establish that the defendant intended to force the victim "to make any concession" in order to secure her release, we must address the meaning of the term "concession" as it relates to the evidence.

■ In considering whether there is sufficient evidence to support a jury's finding of fact, we must view the evidence in the light most favorable to the prosecution. *People v. Jensen*, 747 P.2d 1247, 1253 (Colo.1987). Additionally, the prosecution must be given the benefit of every reasonable inference that can be drawn from that evidence. *People v. Gonzales*, 666 P.2d 123, 128 (Colo.1983); *People v. Trujillo*, 190 Colo. 45, 47, 543 P.2d 523, 524 (1975).

■ The evidence would have permitted the jury to find that the defendant intended to force the victim to promise to bring him eleven- or twelve-year-old children and that

she did promise to meet him at a designated time and place on the following day to provide him with such a child. The evidence also permits the inference that the defendant implicitly agreed to release the victim when he had completed the sexual assault and when she had made the promise to supply the defendant with young children. This brings us to the specific question of whether such a promise constitutes a "concession" within the meaning of the first-degree kidnapping statute.

■ In determining the meaning and scope of a statutory term, our primary objective must be to give effect to the intent of the General Assembly. *People v. District Court, Second Judicial Dist.*, 713 P.2d 918, 921 (Colo.1986). We look first to the statutory language to ascertain this intent. *Id.* However, when language can be construed in alternative ways and its intended scope is not clear, we may look to legislative history to determine the construction that is in accordance with the statute's objective. *People v. Davis*, 794 P.2d 159, 180 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991).

The General Assembly amended Colorado's kidnapping statute in 1971, ch. 121, sec. 1, §§ 40–3–301, –302, 1971 Colo.Sess. Laws 388, 421–22, and set forth two degrees of the offense.[6] As related to the facts of this case, first-degree and second-degree kidnapping were distinguished by the actor's intent in seizing a victim. *Compare* § 18–3–301(1)(a), 8B C.R.S. (1986),

---

forced to submit to a sexual assault without any choice in the matter, *see People v. Bridges*, 199 Colo. 520, 526, 612 P.2d 1110, 1115 (1980), the court concluded that the defendant's forcible sexual assault could not be used to prove that he acted with the requisite intent. *Emerterio*, 819 P.2d at 519. The People did not petition for review of this conclusion. Nor did they argue that if the reversal of the first-degree kidnapping conviction was proper, the remedy should have been remand for retrial rather than for entry of a judgment of conviction for second-degree kidnapping. Rather, the sole question for which the People sought review was whether the court of appeals erred in holding that the victim's promise to procure children for the defendant for sexual purposes did not constitute a "concession." Accordingly, we granted certiorari on this specific issue.

Furthermore, the defendant argues that the trial court's instruction defining the elements of first-degree kidnapping, in addition to the prosecutor's closing argument, allowed the jury to return a verdict of guilty on a legally impermissible basis and, therefore, that his conviction must be set aside. Since the defendant did not raise this issue in his cross-petition for certiorari, however, we decline to consider it on review.

6. The previous statutes, §§ 40–2–44, –45, 3 C.R.S. (1963), did not establish different "degrees" of kidnapping. Instead, they set forth various ways by which the crime of kidnapping could be accomplished and prescribed a range of penalties depending on how the actor committed the offense and whether the victim sustained bodily harm.

*with* § 18–3–302(1), 8B C.R.S. (1986). The revision originated with a recommendation made by the Colorado Legislative Council to elevate the offense to aggravated kidnaping if the actor holds a victim for ransom. The Council's proposed language covered those situations where the person acts with the specific intent to force another "to give up anything of value in order to secure [the victim's] release." Colorado Legislative Council, *Research Publication No. 98, Report to the Colorado General Assembly: Preliminary Revision of Colorado Criminal Laws* 19 (1964).[7] The Council stated that while "ransom will usually be money, the broader term 'anything of value' is used to cover things like jewels or other valuables." *Id.* at 20. Thus, as recommended by the Council, although the term "anything of value" was meant to be broadly inclusive, it was still limited by the requirement that the item sought have monetary value.[8]

■ The General Assembly, however, enacted a more comprehensive version of the first-degree kidnapping statute. It adopted most of the Council's recommendations, but added the words "make any concession or" before the words "give up anything of value" in the final enactment. Although we have been unable to discover any legislative discussion relating to this new language, we must assume the General Assembly intended to increase the statute's scope beyond the Council's proposal so as to cover situations where a kidnapper seeks something other than monetary reward in exchange for the victim's release. *Bridges,* 199 Colo. at 526, 612 P.2d at 1114–15 (addition of term "concession" made statute "broader than the typical ransom statute"); *see also Davis,* 794 P.2d at 181 (" 'when a statute is amended, it is presumed that the legislature intended to change the law' ") (quoting *Charnes v. Lobato,* 743 P.2d 27, 30 (Colo.1987)); *accord People v. Hale,* 654 P.2d 849, 851 (Colo. 1982). Furthermore, were we to limit "concession" to only those situations where an actor intends to gain something objectively valuable, such as money, the term would be redundant when construed with the phrase "anything of value." We reject such a limiting view, and believe the better interpretation is one that recognizes a more expansive scope for the statute and allows it to cover situations where kidnappers act with the intent of obtaining a benefit that is subjectively valuable to them. This gives "concession" meaning in itself and does not render the term mere surplusage. *See People v. District Court,* 713 P.2d at 921 (a "statute should be interpreted so as to give consistent, harmonious, and sensi-

---

7. The Council's comment on the proposed first-degree kidnapping section stated:

> This section defines the offense of simple kidnaping and false imprisonment *with the intent to extort a ransom.* It increases the penalty for kidnaping when it is done for ransom....

Colorado Legislative Council, *Research Publication No. 98, Report to the Colorado General Assembly: Preliminary Revision of Colorado Criminal Laws* 20 (1964) (emphasis added); *see Bridges,* 199 Colo. at 525, 612 P.2d at 1114 (statutory language as proposed by Council "made clear that the revision was intended to apply to ransom and extortion situations").

8. When the General Assembly enacted the kidnaping statutes in 1971, it also adopted a definition of the phrase "thing of value." Ch. 121, sec. 1, § 40–1–1001(r), 1971 Colo.Sess.Laws 388, 414. As presently codified, " '[t]hing of value' includes real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith," § 18–1–901(3)(r), 8B C.R.S. (1986), all of which appear to have objective value in most situations. Although the first-degree kidnapping statute uses the slightly different term "anything of value," we have considered the phrases interchangeable in the context of a prosecution for theft. *See People v. Parga,* 188 Colo. 413, 416–17, 535 P.2d 1127, 1128–29 (1975) (real property satisfies theft statute's "anything of value" element since it is included in definition of "thing of value"). However, resolution of the issue presented in this case does not require that we interpret the phrase "anything of value." Consequently, we do not address the applicability of the statutory definition in the context of the first-degree kidnapping statute. Furthermore, since our interpretation of the term "concession" as being sufficiently broad to include benefits that are subjectively valuable to a kidnapper necessarily brings items of nonmonetary value within the statute, we need not consider whether the statute increases the scope of "anything of value" beyond the meaning originally proposed by the Council.

ble effect to all its parts"); *accord Weld County Court v. Richards,* 812 P.2d 650, 652 n. 1 (Colo.1991).

Our construction of the term "concession" is consistent with interpretations that courts in at least two other jurisdictions have given to statutes that extend first-degree kidnapping beyond ordinary ransom situations. *State v. Hanna,* 180 W.Va. 598, 378 S.E.2d 640 (1989), a case decided by the West Virginia Supreme Court of Appeals, is particularly instructive. West Virginia's statute makes it unlawful for any person to kidnap another "for the purpose or with the intent of taking, receiving, demanding or extorting ... any ransom, money or other thing, or any concession or advantage of any sort...." W.Va.Code § 61–2–14a (1989). In *Hanna,* 378 S.E.2d at 647, the court addressed the construction of this statute to determine whether evidence of a defendant's action in forcibly removing his girlfriend from his rival's home "in order to talk to her alone and ... attempt to persuade her to resume their relationship," *id.* at 648, supported a finding of intent to demand a concession. The court stated that while sexual motivations may satisfy the statute,[9] "the intent to demand a concession or advantage has a much broader meaning and may encompass other benefits or purposes as well." *Id.* at 647. It concluded, therefore, that the defendant's "forcible reconciliation efforts" were sufficient to support a finding of intent to demand or extort a concession, i.e., an agreement to resume their relationship. *Id.* at 648.

The Federal Kidnapping Act also defines kidnapping broadly, making it unlawful to "seize[ ], ... or carr[y] away and hold[ ] for ransom or reward *or otherwise* any person, except in the case of a minor by a parent thereof...." 18 U.S.C. § 1201 (1988) (emphasis added). The phrase "or otherwise" was added to the statute in 1934,[10] and the United States Supreme Court has since given a broad interpretation to these words. *See Gooch v. United States,* 297 U.S. 124, 126, 56 S.Ct. 395, 396, 80 L.Ed. 522 (1936). In *Gooch,* the Court refused to apply the ordinary statutory construction rule of *ejusdem generis*[11] and rejected the idea that the words "ransom or reward" imputed a pecuniary consideration or an element of valuable payment to the added words. It then determined that "[h]olding an officer to prevent the captor's arrest is something done with the expectation of benefit to the transgressor" and is encompassed by the broad term "otherwise." *Id.* at 128, 56 S.Ct. at 397.[12]

■ The Federal Kidnapping Act would appear to support a construction that holding someone to obtain any form of benefit would satisfy the statute's intent requirement. *See United States v. Healy,* 376 U.S. 75, 81, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964) (recognizing legislative intent that the Federal Kidnapping Act extends to cases where victims are kidnapped " 'not only for reward, but for any other reason' ") (quoting S.Rep. No. 534, 73 Cong., 2d Sess. (1934); H.R.Rep. No. 1457, 73d Cong., 2d Sess., at 2 (1934)). The Colorado statute does not contain language as broad as that set out in the federal act. We are

---

**9.** The court cited cases from other jurisdictions where evidence of sexual assaults supported convictions for kidnapping under statutes requiring an intent to obtain either a concession, advantage, or thing of value from a victim. *See, e.g., State v. Dubina,* 164 Conn. 95, 318 A.2d 95, 98 (1972) ("restraint for the purpose of obtaining a concession of sexual compliance" satisfies kidnapping statute's intent element); *State v. Sonnier,* 379 So.2d 1336, 1359–60 (La.1979) (sexual gratification may constitute "something of 'value' or an 'advantage' "), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).

**10.** The Amending Act of May 18, 1934, ch. 301, 48 Stat. 781, 18 U.S.C. § 408a.

**11.** As the Court noted in *Gooch,* the rule of *ejusdem generis* "limits general terms which follow specific ones to matters similar to those specified." *Gooch,* 297 U.S. at 128, 56 S.Ct. at 397. The Court observed, however, that the rule "is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty" and "may not be used to defeat the obvious purpose of legislation." *Id.*

**12.** The Court in *Gooch* suggested, but did not decide, that "reward" may itself be broad enough to encompass things not possessing pecuniary value. 297 U.S. at 126, 128, 56 S.Ct. at 396, 397.

satisfied, however, that the term "concession" as used in section 18–3–301(1) is broad enough to include a promise that has sufficient subjective value to a kidnapper that he would hinge release of a victim upon that promise. Accordingly, we disagree with the court of appeals' narrow interpretation of the term "concession" and hold that the victim's promise to bring the defendant eleven- or twelve-year-old children is sufficient to constitute a "concession." Thus, all of the elements of first-degree kidnapping are present if a defendant forcibly seizes a victim and carries her away with the intent to force her to make such a promise in order to secure her release. *See* § 18–3–301(1), 8B C.R.S. (1986).

■ Furthermore, we reject the court of appeals' reasoning that the defendant's lack of control over the victim after her release and his consequent inability to secure her performance of the promise meant that there could not be a concession. *See Emerterio*, 819 P.2d at 519. Implicit in the court of appeals' view is the requirement that a victim must be under the kidnapper's control so that he can ensure her compliance with his demand. This interpretation is inconsistent with the literal language of the statute and contravenes our ordinary rules of construction. *See People v. District Court*, 713 P.2d at 921 ("Words and phrases should be given effect according to their plain and ordinary meaning."). First-degree kidnapping requires only an intent to force a concession. It does not require that the concession be made, much less that the actor have the ability to assure receipt of the benefits of the concession. The correct focus therefore is on the defendant's state of mind and whether he acted with the requisite intent, not on whether the victim made or followed through on the promise.

■ This view comports with our suggestion in *Bridges* that proof of a victim's submission to a sexual assault may establish a "concession" if " 'the defendant warranted, and the victim perceived, that her freedom was dependent upon her submission to the sexual assault.' " *Bridges*, 199 Colo. at 526 n. 11, 612 P.2d at 1115 n. 11

(quoting *People v. Molina*, 41 Colo.App. 128, 129, 584 P.2d 634, 635 (1978), *overruled in part by Bridges*, 199 Colo. at 526, 612 P.2d at 1115). *See also People v. Nunez*, 673 P.2d 53, 54 (Colo.App.1983) (referring to footnote 11 in *Bridges* but determining that the facts did not present an issue of defendant's warranty and victim's perception). While this language seems to focus, in part, on the victim's subjective impressions, this reference in *Bridges* was solely by way of factually distinguishing *Molina*, a case where the evidence clearly showed that "the defendant warranted, and the victim perceived, that her freedom was dependent on her submission to the sexual assault." *Molina*, 41 Colo.App. at 129, 584 P.2d at 635. Even in *Molina*, however, the court went on to make clear that the proper question in assessing whether the elements of first-degree kidnapping were met was whether there was proof "of a defendant's kidnapping the victim with the *intent* to force her to make a sexual concession to effect her release." *Id.* Thus, to satisfy the statute's intent element, it is not necessary that the victim perceive that her release is contingent upon the giving of some concession. Evidence of this perception, however, may provide proof from which a fact finder could infer that the defendant intended such a result. *See People v. Morgan*, 637 P.2d 338, 346 (Colo.1981) (evidence that while sexually assaulting the victim, the defendant assured her that she would not be harmed if she did what she was told was "sufficient to allow the jury to infer that [he] intended to force concessions from [her] in order to secure her ... release"). Properly understood, the reference in *Bridges* to the victim's perception was not intended to suggest that such perception is relevant for any purpose other than as evidence of the defendant's intent.

Our focus on the defendant's intent is also in line with the approach taken by other jurisdictions. *See State v. Knutson*, 220 N.W.2d 575, 578 (Iowa 1974) ("It is the defendant's imposition of a price for liberation that fulfills [the kidnapping statute], not payment of the price."); *State v. Moore*, 315 N.C. 738, 340 S.E.2d 401, 405 (1986) (under statute that bases kidnapping

on theory that defendant's purpose was to terrorize victim "the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize her"). Since there was sufficient evidence in the present case showing that the defendant intended to obtain the victim's promise in return for her release, that promise constituted a concession regardless of whether he had the means of enforcing it. Moreover, to the extent that the court of appeals' holding can be read to impose a control requirement to make a promise sufficiently valuable to constitute a concession, we reject the assignment of that restrictive scope to the term "concession."

### III

The court of appeals erred in determining that a victim's promise to perform an act after her release and over which the defendant has no control to insure her performance cannot constitute a "concession" under section 18-3-301, 8B C.R.S. (1986). Consequently, we conclude that there is sufficient evidence to support the jury's finding that the defendant intended to force the victim to make a concession in order to secure her release. We reverse the judgment of the court of appeals and return the case to that court with directions to remand for entry of judgment of conviction and imposition of sentence for first-degree kidnapping.

QUINN, J., does not participate.