**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel Lyle JENSEN, Defendant–Appellant.**

**No. 06CA0742.**

Colorado Court of Appeals, Div. III.

Oct. 18, 2007.

John W. Suthers, Attorney General, Elizabeth J. Wahl, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Wilderson, O'Hayre, Dawson & Frazier, P.C., Rufus O. Wilderson, Gunnison, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Daniel Lyle Jensen, appeals the judgment entered upon a jury verdict finding him guilty of theft of real property. We affirm.

In November 2002, after Dale Crownover (the victim) was arrested and charged with several felony counts, defendant cosigned the

victim's appearance bond to assist him in posting bail.

According to the victim, he intended to pledge his real property on which his home was located as collateral for defendant's co-signing the appearance bond. When the victim gave defendant the warranty deed through which the victim had acquired title to the property, he understood that the deed would be returned to him if he complied with bond conditions. Later that day, while signing numerous documents related to his agreement to pledge his real property, the victim signed a quitclaim deed for the same real property in favor of defendant's wife. The victim testified at trial that he did so unknowingly. This quitclaim deed was later recorded.

Subsequently, the victim complied with his bond conditions, but defendant refused to return either the victim's warranty deed or the quitclaim deed.

Thereafter, the People charged defendant with one count of theft of real property with a value of $15,000 or more, a class three felony. Following a three-day trial in December 2005, the jury found defendant guilty as charged.

## I. Theft of Real Property

■ Defendant contends the trial court erred in sustaining the conviction for theft because, to commit theft of real property, one must either obtain or exercise physical control over the property or unlawfully obtain legal title to the property. Defendant further argues he did not steal the property because he never possessed or asserted physical control over the property and the quitclaim deed executed in favor of his wife either was, as a matter of law, void or constituted a lien. We are not persuaded.

■ Interpretation of statutes is a question of law that we review de novo. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991).

■ A court's responsibility in interpreting a statute is to ascertain and give effect to the intent of the General Assembly. *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). If the language of the statute is unambiguous, its plain meaning must be given effect. *Id.*

However, if the language is ambiguous, the court may look to legislative history and prior law to discern its meaning. *Id.*

Colorado's theft statute states, in pertinent part, "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and ... [i]ntends to deprive the other person permanently of the use or benefit of the thing of value ...." § 18–4–401(1)(a), C.R.S.2007.

Section 18–4–401(1) does not specify how one obtains or exercises control over real property. As noted, defendant contends that, to steal real property, one must either (1) obtain or exercise *physical* control over the property or (2) unlawfully obtain legal title to the property. We disagree with his first contention and, thus, do not address the second.

In *People v. Parga*, 188 Colo. 413, 417, 535 P.2d 1127, 1129 (1975), the supreme court held that real property may be the subject of theft. The court reached this conclusion after seeking guidance from the Illinois theft statute, upon which Colorado's theft statute was patterned. *Id.* at 416, 535 P.2d at 1129. The Illinois legislature defined theft of property to include real property. *Id.* at 417, 535 P.2d at 1129.

In dictum, the court cited the Illinois legislature's definition of "obtains control" as applied to real property. *Id.* "[T]he phrase 'obtains or exerts control' over property, includes but is not limited to the ... sale, conveyance, or transfer of title to, or interest in, or possession of property." *Id.* (quoting Ill.Ann.Stat. ch. 38, § 15–8 (1970) ).

The court further cited the Model Penal Code's definition of "obtain." *Id.* "[O]btain means: (a) in relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another." *Id.* (citing Model Penal Code § 223(5) (Proposed Official Draft 1962) ).

The phrase in section 18–4–401(1), "obtains or exercises control," is substantially similar to the Illinois provision, "obtains or exerts control." Because the dictum in *Parga* has

not yet been adopted as decisional law in a reported decision, we adopt it now. *See Pub. Serv. Co. v. Indus. Comm'n*, 189 Colo. 153, 155, 538 P.2d 430, 432 (1975) (supreme court adopts obiter dictum in prior opinion as its holding; court makes prior statement "Ex cathedra").

■ Consequently, we apply the dictum in *Parga* to interpret section 18–4–401(1) and conclude that "obtains or exercises control" over real property includes the conveyance of real property through a quitclaim deed. In other words, a person may obtain or exercise control over real property by obtaining or retaining an interest in real property without authorization and with the intent to deprive another person permanently of the use or benefit of such real property. Contrary to defendant's contention, nothing in *Parga* suggests that *physical* control over real property is required.

■ Thus, one may commit theft of real property by obtaining, retaining, or exercising control over a quitclaim deed with the intent to permanently deprive the grantor of the quitclaim deed of his or her interest in the property, contrary to the parties' agreement.

Here, defendant did not return the deeds to the victim after he satisfied his bond conditions, as the parties had agreed. By recording the quitclaim deed or facilitating its recording by defendant's wife, defendant exercised control over the victim's real property with the intent to deprive him of his interest in such property. Accordingly, the trial court did not err in sustaining defendant's conviction for theft of real property.

Accordingly, we need not address defendant's alternative argument that he could not be guilty of theft because he did not unlawfully obtain legal title to the victim's property inasmuch as the quitclaim deed to defendant's wife was void or was a lien, rather than a conveyance.

## II. Evidence of Value

■ Defendant next argues the trial court erred in sustaining the jury verdict because there was insufficient evidence of the market value of the victim's property at the time of the alleged theft. Again, we disagree.

When assessing the sufficiency of the evidence in support of a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt.

*People v. Sprouse*, 983 P.2d 771, 777 (Colo. 1999).

■ "[T]o justify submission of a case to the jury, the People must introduce competent evidence going to each and every element of the crime charged." *People v. Paris*, 182 Colo. 148, 150, 511 P.2d 893, 894 (1973). Where the value of the item stolen determines the grade of the offense, the People must present competent evidence of the reasonable market value of the item at the time of the commission of the alleged offense. *Henson v. People*, 166 Colo. 428, 431, 444 P.2d 275, 277 (1968); *Paris*, 182 Colo. at 151, 511 P.2d at 894. As noted, defendant was charged with theft of real property with a value of $15,000 or more.

■ While an owner is always competent to testify as to the value of his or her property, the testimony must relate to its value at the time of the commission of the crime. *Paris*, 182 Colo. at 151, 511 P.2d at 894.

Where ... the owner testifies only to the purchase price of the goods, such testimony is competent evidence of fair market value only where the goods are so new, and thus, have depreciated in value so insubstantially, as to allow a reasonable inference that the purchase price is comparable to current fair market value.

*Id.* "Without competent evidence of fair market value, the jury would have had to base its determination of the value of the goods in question at the critical time on pure speculation." *Id.* at 151, 511 P.2d at 894–95.

Defendant argues the prosecution failed to introduce evidence concerning the market value of the real property in 2002. The prosecution, he asserts, only introduced evidence of the price the victim paid for the

property in 1996 and the cost of improvements made to the property between 1996 and 2002. Without any evidence regarding the condition of the property in 2002 or its market value in 2002 compared to 1996, defendant maintains the prosecution produced insufficient evidence.

Here, the victim did not testify as to the fair market value of the property in 2002. He only testified about what he paid for the property in 1996 and what he spent improving the property between 1996 and 2002. Moreover, the real property was not so newly purchased as to allow a reasonable inference that the purchase price was comparable to its fair market value six years later in 2002.

However, contrary to defendant's contention, the jury did not need to speculate about the fair market value of the property at the time of the offense. Evidence was introduced at trial concerning the property's market value in 2002. Betsy Royse, the prosecutor's investigator, testified without objection that defendant told her that the bondsman required defendant's co-signature on the victim's bond because the real property at issue, being used as collateral, was worth only $21,000. The bondsman's opinion of the real property's market value was given contemporaneously with the victim's execution of the quitclaim deed.

Consequently, we conclude that the People presented competent evidence of the reasonable market value of the real property at the time of the theft. Therefore, the trial court did not err in sustaining defendant's conviction for theft of real property with a value of $15,000 or more.

The judgment is affirmed.

Judge ROY and Judge TERRY concur.