24CA0057 Peo v Mattorano 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0057
El Paso County District Court No. 22CR4534
Honorable William H. Moller, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

George Craig Mattorano,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Jenna Baker, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

McClintock Law Firm, LLC, Elizabeth A. McClintock, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1    Defendant, George Craig Mattorano, appeals the judgment entered on a jury verdict finding him guilty of soliciting for child prostitution, attempted patronizing a prostituted child, and attempted sexual assault on a child.  We affirm.

## I.    Background

¶ 2    As part of an undercover operation, a federal agent posted an advertisement on a website dedicated to prostitution and escort services.  The post advertised a "lil princess" and listed "[a]ctivities this service provider may enjoy" to include "Intercourse – Anal (Greek); Intercourse – Vaginal (FS); Oral – receiving (DATY); Intercourse – Oral; Kissing – closed lips; Oral – without condom (BBBJ)."

¶ 3    Responding to the ad, Mattorano initiated the following text exchange:

| Mattorano | Hello |
| Mattorano | You look very nice |
| Mattorano | I would like to see you when you maybe available |
| Agent | Hey hun my girl is available after 1. My girl is 14 but down for whatever.  Let me know |
| Mattorano | What |
| Mattorano | Your girl?? |
| Agent | yes my daughter |
| Mattorano | You see people too |

| Mattorano | What part of town if I may ask |
| --- | --- |
| Mattorano | Hello |
| Agent | downtown |
| Agent | Just my daughter not me |
| Mattorano | Ok |
| Mattorano | 1:30 |
| Agent | that works |
| Mattorano | Where at downtown |
| Mattorano | Donation |
| Agent | 200 fs for hour |
| Agent | I will give u address when u are close |
| Mattorano | No fun busy correct |
| Mattorano | Qv ok |
| Agent | yeah QV is fine.  what time hun |
| Mattorano | I can be in your area by 2 |
| Mattorano | Is it safe and no issues |
| Agent | yes safe |
| Mattorano | You will be there too or |
| Agent | Yes, i am here with her. |
| Mattorano | Ok |
| Mattorano | Just a little nervous |

¶ 4    Shortly after this exchange, Mattorano arrived at the agreed upon location and paid $100 for a "quick visit" to a detective posing as the girl's mother.  The "mother" directed Mattorano to a room where her "daughter" was waiting.  Agents arrested Mattorano as he headed toward that room.

¶ 5    Mattorano admitted in a recorded police interview that he had paid $100 for sex, and that he saw the referenced age in the text exchange, but he claimed that he thought it was a typo.  He insisted

2

that he thought he was meeting a nineteen-year-old, not a fourteen-year-old. The prosecution charged Mattorano with soliciting for child prostitution, attempted patronizing a prostituted child, and attempted sexual assault on a child.

¶ 6 Mattorano did not testify at trial, but his counsel defended on the theory that Mattorano thought that the person he was meeting was nineteen — not fourteen — and that he had not expressly arranged for a sex act.

¶ 7 The jury convicted Mattorano as charged. The district court sentenced him to sex offender intensive supervision probation for a controlling term of ten years to life.

¶ 8 On appeal, Mattorano contends that the district court erred by (1) admitting expert testimony from a lay witness and (2) failing to properly instruct the jury on the crime of soliciting for child prostitution. We consider each contention in turn.

## II. The Agent's Testimony

¶ 9 Mattorano first contends that the district court reversibly erred by admitting as lay opinion testimony what was actually expert opinion testimony from the federal agent. We disagree.

## A.     Standard of Review and Legal Principles

¶ 10     We review a district court's evidentiary rulings for an abuse of discretion. *People v. Murphy*, 2021 CO 22, ¶ 16. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or is contrary to law. *People v. Williams*, 2025 COA 26, ¶ 28.

¶ 11     We review unpreserved evidentiary claims for plain error. *People v. Penn*, 2016 CO 32, ¶ 28. Plain error is obvious and substantial error that so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction. *Id.*

¶ 12     But we will not review alleged errors that a defendant invites or injects into the case. *People v. Rediger*, 2018 CO 32, ¶ 34.

## B.     Direct and Redirect Examination Testimony

¶ 13     The federal agent testified on direct and redirect examination about the text exchange he had with Mattorano. During direct examination, he explained some of the terminology used in the exchange, including that "donation" meant the cost of a prostitute's services, "no fun busy" meant "no funny business," and "QV" meant "quick visit." And on redirect, the agent explained that "fs" meant "full service" and briefly described service pricing.

4

¶ 14     Mattorano didn't object to any of this testimony but now argues that the district court should've excluded it as improper expert testimony because it was based on "specialized knowledge." *See People v. Ramos*, 2012 COA 191, ¶ 14 (holding that when an officer's opinion is based on "experience-based specialized knowledge," the officer must be qualified as an expert under CRE 702), *aff'd*, 2017 CO 6.

¶ 15     Even if the explanation of any of the terms used in the text exchange required specialized knowledge — and that may be generous — any error in allowing the agent's testimony was not substantial.  After all, Mattorano admitted in his police interview that he responded to the ad and paid $100 for sex.  The material disputed issue at trial was whether Mattorano believed he was arranging a meeting with an adult or a child.[1]  The agent's testimony explaining some of the generic terms in the text exchange had nothing to do with this issue.  Indeed, Mattorano doesn't explain how any of the explanations were prejudicial.

---

[1] Defense counsel also argued at trial that it wasn't clear that Mattorano had arranged for a sex act.  But perhaps because Mattorano admitted in his police interview that he had paid for sex, he doesn't raise this argument on appeal.

¶ 16    Given this, we can hardly say that any error in allowing the agent's testimony substantially influenced the verdict or undermined the fundamental fairness of the trial.  *See Penn,* ¶ 28.

### C.    Cross-Examination Testimony

¶ 17    During cross-examination, defense counsel also questioned the agent about the posted advertisement and the text exchange with Mattorano.  Defense counsel elicited testimony from the agent that Mattorano "definitely" saw the text stating that the girl he planned to meet was fourteen, testimony about how some people respond when they think they are meeting a child, and testimony about how Mattorano responded.  Part of that colloquy included the following testimony:

> Defense Counsel: Well, he didn't say, okay.
> She's 14, I'm okay with that?
>
> Agent: But he's actually shocked, your girl?
> Question mark.  Question mark.  So we knew
> at that point that he saw the text.
>
> . . . .
>
> Defense Counsel: Well, that's because your ad
> is completely different because it doesn't say
> anything about my daughter, or anyone else.
> It says, you're going to be contacting the actual
> provider?  Right?

. . . .

> Agent: Whoever replies to it would assume, yes, they are talking to the person. That's why we will clarify later on that they are not talking to the actual child.
>
> Defense Counsel: And you keep saying a lot that you assume. They assume. Do you know what everyone assumes? This is a person –
>
> Agent: I know what a reasonable person would think when we tell them they are meeting a 14-year-old. They would be a lot more shocked than this person was.[2]
>
> Defense Counsel: That's your opinion?
>
> Agent: Based on a hundreds of texts that we got from people that actually said no, I will not meet with a child.

¶ 18    Pressing the agent more on the text exchange, defense counsel elicited the agent's testimony that because the text plainly stated that the girl Mattorano arranged to meet was fourteen and because Mattorano expressed in the exchange that he was scared about the meeting, Mattorano knew "he's breaking the law at that point."

---

[2] The prosecution briefly revisited this topic in redirect examination, again without any objection.

¶ 19     Mattorano now asks us to reverse his convictions because he contends that the testimony his counsel elicited was improper expert testimony.

¶ 20     Under these circumstances, we agree with the People that defense counsel invited any error. Indeed, defense counsel's broad questioning about the agent's text exchange led to the challenged statements and opened the door for the agent to express his opinions. And defense counsel neither objected to any response nor asked the court to strike any response. Because the agent's explanations were responsive to the questions and "were a foreseeable result of the form of [defense counsel's] questioning," any error in admitting the testimony was invited. *People v. Wittrein*, 221 P.3d 1076, 1082 (Colo. 2009); *see also People v. Shackelford*, 511 P.2d 19, 20 (Colo. 1973) (concluding that any error in admitting "unwanted testimony" was invited by defense counsel's questioning). Mattorano must therefore "abide the consequences" of defense counsel's acts. *Rediger*, ¶ 34; *see also Shackelford*, 511 P.2d at 20.

### III.    Soliciting for Child Prostitution Jury Instruction

¶ 21    Mattorano next contends that the district court reversibly erred by instructing the jury that to be guilty of soliciting for child prostitution, a defendant must act knowingly rather than intentionally.

¶ 22    To be sure, the culpable mental state for soliciting for child prostitution was disputed at the time of trial. *Compare People v. Emerterio*, 819 P.2d 516, 518 (Colo. App. 1991) (holding that the culpable mental state is knowingly), *rev'd on other grounds sub nom. People v. San Emerterio*, 839 P.2d 1161 (Colo. 1992), *with People v. Ross*, 2019 COA 79, ¶ 30 (concluding that the culpable mental state is intentionally), *aff'd on other grounds*, 2021 CO 9, *and overruled in part by Randolph v. People*, 2025 CO 44.  But while this appeal was pending, our supreme court resolved this dispute and held that "to be guilty of soliciting for child prostitution, an offender must act knowingly." *Randolph*, ¶ 65.

¶ 23    The district court here instructed the jury that it must find that Mattorano knowingly solicited another for the purpose of prostitution of or by a child.  Because the instruction is consistent

9

with *Randolph*, we reject Mattorano's contention that the court committed reversible instructional error.

## IV.   Disposition

¶ 24    The judgment is affirmed.

JUDGE BROWN and JUDGE SCHOCK concur.